**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 13 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

SILAS GARCIA,

      Plaintiff-Appellant,

v.

CITY OF ALBUQUERQUE;
LAWRENCE RAEL, Chief
Administrative Officer; ANNE
WATKINS, Director of Transit
Department; CITY EMPLOYEE
HEALTH CENTER,

      Defendants - Appellees,

KAREN MULLOY, Dr., Director of
Employee Health Clinic; CITY
EMPLOYEE ASSISTANCE PROGRAM;
JULIA BAIN, Primary Therapist and
Program Director; CITY PERSONNEL
BOARD; JAMES FOLEY, Chairman,

      Defendants.

No. 98-2338

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-96-1459 MV/LCS)

---

Paul Livingston, Attorney at Law, Albuquerque, New Mexico for Appellant.

Charles W. Kolberg, Assistant City Attorney, Albuquerque, New Mexico for Appellees.

Before **KELLY**, **HOLLOWAY** and **BRISCOE**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

Plaintiff/appellant Silas Garcia filed this action against his employer, the City of Albuquerque, and various city officials (the City). Garcia alleged, in part,[1] that the City terminated him in violation of his: (1) right to procedural due process, (2) right to substantive due process, and (3) liberty interest. The case was referred to a magistrate to hear pre-trial motions. Thereafter, the City moved for summary judgment. The magistrate recommended granting the motion. Garcia objected to the recommendation arguing, in part, that the magistrate did not have authority to review the City's summary judgment motion. The district court denied Garcia's objections and granted the City's motion for summary judgment. Garcia moved for reconsideration, which the district court denied. This timely appeal ensued. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

**I**

Silas Garcia served as a bus driver for the Transit Department of the City of Albuquerque for fourteen years, from 1982 until his termination in 1996. Appendix at 2. On January 1, 1995, the Transit Department instituted a substance abuse policy designed

---

[1] Plaintiff asserted other causes of action but he has not argued those claims on appeal.

to maintain a drug and alcohol free workplace in compliance with the Drug Free Workplace Act of 1988, the Omnibus Transportation Employee Testing Act of 1991, and the Federal Transit Administration Regulations, 49 C.F.R. §§ 653, 654, and 40.  Under the Federal Transit Administration Regulations, revenue vehicle operators, such as Garcia, are classified as safety sensitive employees, and thus are subject to random drug testing by their employers.  Id. at 26.  Consequently, in February 1996, the City required Garcia to submit to a random, suspicionless urinalysis drug test, the results of which revealed the presence of metabolites for marijuana.  Appendix at 2.  On March 26, 1996 the City terminated Garcia's employment for violating the Transit Department's "zero tolerance" drug policy.  Id.

Garcia filed a disciplinary grievance pursuant to the City's Merit System Ordinance and requested a hearing to contest his termination before a Personnel Hearing Officer.  Id.  On April 19, 1996, the Personnel Board conducted a hearing at which Garcia was represented by United Transportation Union Chairman Robert Gutierrez.  Id.  At the hearing, the parties stipulated that Garcia had been disciplined more severely than other Transit Department employees accused of the same offense and that "there was no evidence that Mr. Garcia was at any time impaired by any substance."  In assessing the appropriateness of Garcia's dismissal, the Hearing Officer considered possible mitigating factors: that since Garcia began his employment with the Transit Department in 1982 he had "performed his duties acceptably"; that his record was "devoid of any other

discipline"; and that this was Garcia's first positive drug test, numerous other random tests having yielded negative results. Against these mitigating factors, the Hearing Officer weighed the fact that Garcia was a safety sensitive employee who knew that he would face discipline if he failed a random drug test. Taking these considerations into account, the Hearing Officer concluded that "on balance" the "factors in mitigation do not outweigh the harshness of the discipline of discharge," and therefore recommended sustaining Garcia's dismissal. Appendix at 25-28.

On review before the Personnel Board, however, the Board voted 4-0 to modify the Hearing Officer's recommendation and reinstated Garcia with a sixty day suspension, predicated on his enrollment in the City's employee assistance program for drug rehabilitation and subject to random testing to be conducted every two weeks for a period of six months. Appendix at 28. On June 13, 1996, the City filed a notice of appeal in New Mexico state court (Second Judicial District Court, County of Bernalillo), challenging the Personnel Board's reinstatement of Garcia and arguing that the Board's decision was "arbitrary or capricious, unsupported by substantial evidence, or otherwise not in accordance with law." Id. at 60.

Garcia contends that he complied with the Personnel Board's order and enrolled in the Employee Assistance Program, attended counseling and therapy sessions, and submitted to the required drug testing, on which he tested negative. See Appellant's Opening Brief at 5. Garcia further contends that in July 1996, with the approval of his

therapist, he signed a "Return to Work Agreement" accepting that upon his return he would be subject to periodic and unannounced drug testing for up to two years. Appendix at 45. Garcia maintains that his therapist then referred him to the City's doctor for a "return to work examination." Appellant's Opening Brief at 5.

On July 10, 1996, a physician with the City's Employee Health Clinic examined Garcia. Although the physician gave Garcia permission to return to work, she imposed the restriction that Garcia not be allowed to drive a bus. Appendix at 47. The physician did not explain the reason why she imposed this restriction.

On July 16, 1996, after Garcia did not report for work, the City sent him a letter informing him that his absence was "unauthorized." He was directed to report for duty and warned that failure to do so could result in "disciplinary action up to and including termination." Appendix at 48. The City then informed Garcia that he was reassigned to a security guard position, but would still have the same rate of pay and hours as he had enjoyed as a bus driver. On July 19, after Garcia failed to report for his reassignment, the City sent Garcia another letter warning him that his absence was "unauthorized" and stating that he was jeopardizing his position with the City. The letter warned that if he did not report to work by July 24, 1996, he would be considered to have voluntarily resigned under Section 3-1-19 of the Merit System Ordinance. Appendix at 49.

On July 24, 1996, after Garcia continued to refuse to report to work, the City notified him that a pre-determination hearing had been scheduled for July 31 to allow him

to respond to the charge of "Unauthorized Absence/AWOL" pursuant to Personnel Rules and Regulations, Section 803, and Section 3-1-19 of the Merit System Ordinance. Garcia was also informed that he was entitled to legal or union representation at the hearing. Appendix at 50. On August 1, 1996, the City reiterated that it would be willing to accept Garcia as a security guard at the same pay and benefits as he earned as a bus driver, pending resolution of its appeal in state court of the Personnel Board's decision. The City told Garcia's counsel, however, that this "offer will only remain open until 5 p.m., August 2, 1996." Otherwise, the City stated, it would proceed and make its decision based on its July 31 pre-determination hearing. Appendix at 51.

On August 5, 1996, the City informed Garcia that its offer of employment had been withdrawn, telling him that because he had refused to report to his security guard reassignment and his efforts to explain his refusal during the July 31 pre-decision hearing were unsatisfactory, it was "left with no alternative but to withdraw that offer of employment." Appendix at 52.

On September 27, 1996, the City filed an Appellants' Statement of Appellate Issues in support of its state court appeal of the Personnel Board's order reinstating Garcia. Although required by state procedures to file and serve a response within thirty days after service, Garcia did not respond. Appendix at 93. On November 8, 1996, the City filed a Motion to Dismiss Appeal for Mootness, seeking an order from the state court declaring that the appeal had become moot since the City complied with the

administrative decision in question. Id. at 61. The City argued that the Personnel Board's order requiring Garcia to be reinstated had been rendered moot since after the City's appeal had been filed, Garcia had refused its offer of reinstatement and had not reported to work, actions that constitute "resignation" under the City's Merit System Ordinance. In so arguing, the City emphasized that there is "nothing in the Personnel Board's order, the Merit System Ordinance, the Personnel Rules and Regulations or the union contract which guarantees Garcia the job duties of his choice." Id. at 62-63. Consequently, the City maintained, it was "no longer under any duty to reinstate Garcia and an appeal of the Personnel Board's order is unnecessary and should be dismissed as moot" since Garcia had resigned. Id.

Although state procedural rules required that Garcia respond to the City's Motion within fifteen days of service, Garcia again failed to reply. Id. at 93-94. Consequently, on March 24, 1997, four months later, the City filed a Motion for Default Judgment for Failure to Timely Respond to Pleadings. Id. Garcia eventually agreed to the court's granting of the motion, and on July 15, 1997 the state court issued an Order of Default, remanding the case to the Personnel Board "for action consistent with this order." Id. at 96. On October 15, 1997, the Personnel Board reversed itself and voted, 4-1 to enter a Final Order upholding the Hearing Officer's termination of Garcia's employment. Id. at 98 ("[T]he Board hereby accepts the previously recommended decision of the Board's Hearing Officer and upholds Silas Garcia's termination for a positive drug test.").

On October 22, 1996, Garcia had filed the instant complaint in the United States District Court for the District of New Mexico, alleging that the City and its officers had violated his right of due process.[2] Appendix at 9. Following the Personnel Board's decision to reinstate Garcia's termination, the City filed a motion for summary judgment in the federal court action. On March 31, 1998, the Magistrate Judge issued his Analysis and Recommended Disposition that the City's motion for summary judgment be granted. Id. at 111. On April 13, 1998, Garcia filed objections to the Magistrate Judge's recommendation, see id. at 113, but on May 29, 1998, the district court adopted the recommendations and granted the City's Motion for Summary Judgment. Id. at 147. The district court then denied Garcia's Motion for Reconsideration, and this appeal followed. Id. at 175.

## II

This court reviews jurisdictional questions de novo. See United States ex rel. Ramseyer v. Century Healthcare Corp., 90 F.3d 1514, 1518 (10th Cir. 1995). The district court's grant of summary judgment is reviewed de novo. See United States v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1160 (10th Cir. 1999).

---

[2]Garcia also alleged state law claims for breach of contract, intentional infliction of emotional distress, prima facie tort, and professional misconduct and malpractice. Appendix at 1.

**A**

Garcia first argues that the magistrate lacked jurisdiction to consider the City's summary judgment motion. Appellant's Opening Brief at 36. According to Garcia, the parties consented to the magistrate's jurisdiction only for motions filed by July 1, 1997. Id. at 37. The City, however, filed its summary judgment motion later. Id. Garcia further contends that the magistrate lacked jurisdiction to resolve the motion because it failed to hold an evidentiary hearing in violation of 28 U.S.C. § 636(c)(1). See id. at 37-38.

Garcia argues that the parties consented to the magistrate deciding dispositive motions pursuant to 28 U.S.C. § 636(c)(1). He says that consent ended before the City filed its summary judgment motion. We find this argument unpersuasive. Contrary to Garcia's suggestion, the district court authorized the magistrate to hear motions in this case pursuant to 28 U.S.C. § 636(b)(1)(B); this is clearly stated in the Magistrate Judge's Analysis and Recommended Disposition. Appendix at 100. As required by 28 U.S.C. § 636(b)(1)(B), the magistrate only made recommendations to the district court regarding the motions; the magistrate did not rule on decisive motions as authorized by 28 U.S.C. § 636(c)(1). Unlike 28 U.S.C. § 636(c)(1), 28 U.S.C. § 636(b)(1)(B) does not require the consent of the parties. Therefore, Garcia's argument is not well taken.

Garcia argues that the magistrate impermissibly ruled on the motion without conducting an evidentiary hearing. Title 28 U.S.C. § 636(b)(1)(B) does authorize

magistrates to "conduct hearings, including evidentiary hearings." Nevertheless, that provision also authorizes the magistrate to "submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of [a summary judgment motion]." See also 28 U.S.C. § 636(b)(1)(A). The magistrate thus had authority to hear a summary judgment motion and was not required to hold an evidentiary hearing.

**B**

Garcia next argues that the district court erred by failing to conduct a de novo review of the magistrate's recommendation, as required by Fed. R. Civ. P. 72(b), when Garcia registered his objection to that recommendation. See Appellant's Opening Brief at 39. Moreover, according to Garcia, that rule also required the district court to "make clear and adequate findings of fact, expressly addressing Plaintiff's specific timely objections." Id. (quoting Massey v. City of Ferndale, 7 F.3d 506, 510 (6th Cir. 1993)). Garcia argues that, here, "there is no indication that the district judge actually reviewed the Magistrate's summary disposition of Plaintiff's claims, even though specific timely exception was made to the recommendations." Id. We disagree.

Pursuant to Fed. R. Civ. P. 72(b), a district court "to whom the case is assigned shall make a de novo determination upon the record . . . of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with

-10-

this rule." See also 28 U.S.C. § 636(b)(1) (imposing the same requirement on the district court). Garcia argues that because he made specific written objections to the magistrate's recommendations, the district court had a duty to conduct a de novo review of the record. According to Garcia, the district court's failure to make clear and adequate findings and conclusions show that it did not conduct de novo review; consequently, we should remand for reconsideration. See Summers v. Utah, 927 F.2d 1165, 1167 (10th Cir. 1991) ("Where circumstances indicate that the district court has not conducted such review following timely objection to the magistrate's report, the case must be remanded for compliance with the statute.").

The district court's order is terse. It contains one sentence on each of Garcia's substantive claims and does not mention his procedural challenges to the jurisdiction of the magistrate to hear the motion. See Appendix at 147. However, neither 28 U.S.C. § 636(b)(1) nor Fed. R. Civ. P. 72(b) requires the district court to make any specific findings; the district court must merely conduct a de novo review of the record. In Griego v. Padilla (In re Griego), 64 F.3d 580 (10th Cir. 1995), this court addressed a similarly terse order. In Griego, the district court "merely repeated the language of § 636(b)(1) to indicate its compliance." Id. at 584. The court held that such treatment was sufficient:

> It is common practice among district judges in this circuit to make such a statement and adopt the magistrate judges' recommended dispositions when they find that magistrate judges have dealt with the issues fully and accurately and that they could add little of value to that analysis. We cannot interpret the district court's statement as establishing that it failed to perform the required de novo review.

-11-

Id.; see also Andrews v. Deland, 943 F.2d 1162, 1170 (10th Cir. 1991).

We hold that although the district court's decision is terse, this is insufficient to demonstrate that the court failed to review the magistrate's recommendation de novo.

### III

Garcia argues that the district court should not have granted summary judgment because there were disputes over material facts. Appellant's Opening Brief at 31. We disagree. Although Garcia is correct that there is a dispute over certain facts, summary judgment is only inappropriate when the issue is "genuine" and involves a "material" fact. See Anaya v. Crossroads Managed Care Sys., Inc., 195 F.3d 584, 589 (10th Cir. 1999) ("Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.") (citation and internal quotation marks omitted). Here, because Garcia has not established the presence of any "genuine" issue of "material" fact, the district court did not err in granting summary judgment since the judge also held that the City as the moving party was entitled to judgment as a matter of law.

First, Garcia argues that there are disputes regarding his "facts" numbered 12,[3] 13,[4]

14,[5] 15,[6] 16,[7] and 20[8] (the numbering is taken from Garcia's enumeration of "uncontested

[3]Garcia's Fact No. 12: "At the Employee Health Clinic, Dr. Mulloy gave him a brief physical examination and then told Garcia that she would return him to work, but that he would not be allowed to drive a bus.  The City thereafter attempted to force Garcia to take a security guard position."  Appendix at 34-35.

[4]Garcia's Fact No. 13:  "Within the next three weeks Garcia received letters from the City Transit informing him that because of Dr. Mulloy's determination, he would not be allowed to drive a bus and he would have to return to work as a security guard, or he would be fired." Appendix at 35

[5]Garcia's Fact No. 14:  "Garcia did not ever want to work as a security guard.  He considers himself a bus driver, and does not believe he should be required to be a security guard."  Appendix at 35.

[6]Garcia's Fact No. 15:  "Following a predetermination hearing on the charge of 'Unauthorized Absence /AWOL' and voluntary resignation, the Transit Department 'withdrew' its 'offer' of a security guard position."  Appendix at 35.

[7]Garcia's Fact No. 16:  "Despite withdrawing its 'offer' of a security guard position, the City purported to 'terminate' Garcia for failing to show up for work for the security guard position."  Appendix at 35.

[8]Garcia's Fact's No. 20:  "On November 7, 1996, the City filed a Motion to Dismiss Appeal for Mootness, informing the State District Court that its 'appeal' should be dismissed because Garcia 'was offered a reinstatement which he refused.'  The City claimed that therefore 'the City is no longer under any duty to reinstate Garcia and an appeal of the Personnel Board's order is unnecessary and should be dismissed as moot."

On November 27, 1996, the City filed a Response to Alternative Writ of Mandamus, informing the State District Court that:

Garcia neglects to disclose to this Court that in the intervening months since this appeal was filed, he refused to accept reinstatement because he disagreed with the medical restrictions placed upon him.  Because of his refusal, there is a substantial question whether the City is under any duty to reinstate Garcia even if he prevails in the instant appeal.

Appendix at 36.

facts" in his Plaintiff's Memorandum in Opposition to Defendant's Motion and in Support of Plaintiff's Counter-Motion for Summary Judgment on Plaintiff's Due Process Claims). Even if we were to accept these facts as true, they would not affect the outcome. Therefore, those facts are not "material," as required to defeat summary judgment.

Second, Garcia argues that there is a dispute over his "fact" number 6.[9] However, Garcia's interpretation of the City Personnel Board's order is not a "fact." The Personnel Board's order required "reinstatement with a 60-day suspension, enrollment in the city's employee assistance program for drug rehabilitation with random drug testing to be conducted every 2 weeks for a period of 6 months." Appendix at 28. Contrary to Garcia's interpretation, this order is unclear whether the "reinstatement" is to any position or his previous bus driving position.

Third, Garcia argues that there is a dispute over his fact number 22[10] and the City's fact number 8.[11] These facts relate to the default judgment entered against Garcia and the

---

[9]Garcia's Fact No. 6: "On May 15, 1996, the City Personnel Board voted to reinstate Garcia to his position as a bus driver with a 60-day suspension. The Board modified the Hearing officer's recommendation and returned him to work on the condition that he enroll in the Employee Assistance Program and undergo continued drug testing." Appendix at 34.

[10]Garcia's Fact No. 22: "After the City Attorney wrote to the Personnel Board telling it to terminate Garcia, the Personnel Board reversed its May 15, 1996, decision reinstating Garcia and upheld his termination instead. The Personnel Board gave no reason or explanation for its reversal, and it issued no new findings of fact or conclusions of law." Appendix at 37.

[11]The City's Fact No. 8: "Contemporaneous with the attempt to place Garcia in a position which was not safety-sensitive, the City challenged in state court the Personnel Board decision ordering his reinstatement. As a result of that appeal, the Personnel Board was reversed and an order upholding the termination of Silas Garcia was entered on October 15, 1997."

Board's subsequent decision upholding his termination. Garcia disputes that the default judgment entered against him reversed the Board's reinstatement order. See Appellant's Opening Brief at 35. Under New Mexico law, however, a default judgment constitutes a final judgment in favor of the non-defaulting party. See Gallegos v. Franklin, 89 N.M. 118, 122-23 (1976) (so holding); see also Sundance Mechanical & Utility Corp. v. Atlas, 109 N.M. 683, 691 (1990) ("Where a complaint requests relief of a certain type or amount and a court has jurisdiction to award the relief, and where the defendant defaults in responding to the complaint or fails to comply with a lawful order regarding the complaint, the defendant waives his right to litigate the propriety of the relief requested and consents, in effect, to entry of judgment by default awarding plaintiff the relief requested."); Xorbox, a Div. of Green & Kellogg, Inc. v. Naturita Supply Co., Inc., 101 N.M. 337, 340 (1984).

Therefore, the default judgment against Garcia reversed the Board's order reinstating him (as noted above, the action was an appeal by the City of the Board's order reinstating Garcia). Indeed, the order itself states that "the case is remanded to the Personnel Board for action consistent with this order." Appendix at 96.

Garcia's fact number 22 states that "[t]he Personnel Board gave no reason or explanation for its reversal, and it issued no new findings of fact or conclusions of law." Appendix at 37. However, contrary to Garcia's assertion, the order stated that "the matter came before the Board on remand from the Second Judicial District Court for action

-15-

consistent with the Order of Default entered by that court in favor of the City's appeal of the Personnel Board's decision." App. at 98. The order therefore clearly and expressly indicates that the Board reversed its decision to reinstate Garcia pursuant to the default judgment. In the circumstances, the district court was not bound by Garcia's contrary (and incorrect) description of the order.

In sum, the district court correctly determined that the default judgment reversed the Board's decision to reinstate Garcia, and that the Board's decision to uphold Garcia's termination occurred because of that reversal. In the circumstances, Garcia has not alleged any "genuine" and "material" factual dispute that prevented the district court from properly granting summary judgment.

## IV

The Due Process Clause of the Fourteenth Amendment prohibits the States from depriving an individual of "life, liberty, or property" without "due process of law." U.S. Const. amend. XIV. In this case, Garcia argues that the City infringed upon both his property and liberty interests. We reject both claims and uphold the district court's grant of summary judgment.

## A

Garcia first contends that the City did not afford him adequate procedural due

process in that after he was reinstated by the Personnel Board, the City "without any hearing and without justification . . . refused to return him to work." Appellant's Opening Brief at 10-11. Garcia bases this argument on the fact that the City's offer of reinstatement contemplated transferring him from his prior position as a bus driver to serving as a security guard.

We are unpersuaded by this argument. When determining whether the government has deprived an individual of his due process rights, the court engages in a two-pronged inquiry. First, we ask whether the individual possessed a protected interest giving rise to due process protection. If that question is answered affirmatively, then we proceed to the second inquiry: whether the government afforded the individual an appropriate level of process. Farthing v. City of Shawnee, 39 F.3d 1131, 1135 (10th Cir. 1994); see also Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1995) ("[O]nce it is determined that the Due Process Clause applies, the question remains what process is due.") (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)); Federal Lands Legal Consortium v. United States, 195 F.3d 1190, 1195 (10th Cir. 1999) (due process "requires an individual to prove that he or she was deprived of a protected interest and that the deprivation occurred without the 'appropriate' level of process").

That Garcia satisfies the first prong, whether he possesses a protected interest, is beyond dispute. As we have noted, the "standard for the existence of a property right in employment is whether the plaintiff has a legitimate expectation of continued

employment." Hennigh v. City of Shawnee, 155 F.3d 1249, 1253 (10th Cir. 1998); see also Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."). Here, as a tenured employee of the City, Garcia clearly meets this requirement. Gilbert v. Homar, 520 U.S. 924, 928-29 (1997) ("[P]ublic employees who can be discharged only for cause have a constitutionally protected property interest in their tenure and cannot be fired without due process.").

Turning to the second inquiry, whether the City provided Garcia with an appropriate level of procedural due process, we note that Garcia does not challenge the adequacy of the process following his initial termination for drug use and review of that decision by the Personnel Board. Rather, Garcia contends that the City denied him due process by refusing to reinstate him to his previous position as a bus driver and only offering him employment as a security guard. Appellant Opening Brief at 10-11.

Contrary to Garcia's assertions, we hold that his procedural due process rights have not been violated. The City argues that although it complied with the Personnel Board's order to reinstate Garcia, he resigned from his employment by refusing to report for work. We agree. As we ruled in Yearous v. Niobrara County Memorial Hosp., 128 F.3d 1351, 1356 (10th Cir. 1997), where plaintiffs "resign[] of their own free will, even as a result of Defendant's actions, then they voluntarily relinquish[] their property

interests and, thus, Defendant did not deprive them of property without due process of law." See also Parker v. Board of Regents of Tulsa Junior College, 981 F.2d 1159, 1162 (10th Cir. 1992). That is the case here. The City, in compliance with the Personnel Board's order, reinstated Garcia's employment, albeit to a different position with the same hours and rate of pay. Not satisfied with being transferred to a different position, however, Garcia repeatedly refused to report to work, ultimately leading the City to designate him as being "AWOL." Since Garcia clearly had the option of returning to work, we hold that his actions constitute a voluntary resignation. Parker, 981 F.2d at 1162 ("A resignation will be involuntary and coerced when the totality of the circumstances indicate the employee did not have the opportunity to make a free choice.").

Moreover, Garcia was afforded three opportunities to challenge the City's actions before neutral bodies: (1) the initial Board hearing, (2) the state court proceedings, and (3) the final Board hearing. In the circumstances, Garcia received all of the process that he was due. Cf. Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (holding that the fundamental requirement of due process "is the opportunity to be heard at a meaningful time and in a meaningful manner") (citation and internal quotation marks omitted); Tonkovich v. Kansas Bd. of Regents, 159 F. 3d 504, 518 (10th Cir. 1998) ("A fundamental principle of procedural due process is a hearing before an impartial tribunal."); Loudermill, 470 U.S. at 542 (holding that it is an "essential principle of due

-19-

process that a deprivation of property be preceded by notice and opportunity for hearing appropriate to the nature of the case") (citation, alterations, and internal quotation marks omitted).

**B**

Garcia next argues that since he has a protected property interest in his position, he is therefore entitled to substantive due process protection. See Appellant's Opening Brief at 15, 26 (citing Loudermill, 470 U.S. at 532). As Garcia notes, substantive due process protects an employee from actions that are "arbitrary." See id. at 17-18. Garcia argues that he was subjected to "arbitrary" actions in two respects: (1) the City arbitrarily refused to return him to his bus driving position as required by the Personnel Board's order, see id. at 18; and (2) the City arbitrarily terminated him. See id. at 28.

This court has held that a tenured employee "possessed a property interest deserving of substantive protections of the Fourteenth Amendment." Tonkovich v. Kansas Bd. of Regents, 159 F.3d at 528 (holding that "because Professor Tonkovich was a tenured professor, the law in this Circuit is that he possessed 'a property interest deserving of . . . substantive protections of the Fourteenth Amendment.'") The City does not contest Garcia's status as a tenured public employee. See Appellees' Answer Brief at 13 (suggesting that Garcia is a tenured employee); App. at 107 (magistrate's recommendation) (same). Therefore, we hold that under Tonkovich, Garcia is entitled to

substantive due process protection.

Accordingly, we must determine whether the City's actions were "arbitrary."
Clark v. City of Draper, 168 F.3d 1185, 1190 (10th Cir. 1999) ("An arbitrary deprivation
of an individual's property right can violate the substantive component of the Due Process
Clause of the Fourteenth Amendment.") (citation and internal quotation marks omitted).
Typically, "[a]ny substantive due process claim must represent more than an ordinary tort
to be actionable under § 1983, and must shock the conscience." Id. (citation and internal
quotation marks omitted); see also Gehl Group v. Koby, 63 F.3d 1528, 1539 (10th Cir.
1995) (stating the same principle).[12] Garcia has not demonstrated that the City acted
sufficiently arbitrarily to violate his due process rights. Concerning Garcia's claim that
the City acted arbitrarily in his termination, we note that the Personnel Board terminated
Garcia pursuant to the default judgment entered against him in state court. That judgment
reversed the Personnel Board's decision to reinstate Garcia. Accordingly, the Board
properly reinstituted the original termination order. As compliance with a valid state
court judgment is not an "arbitrary action," we conclude that the Garcia's termination did
not violate substantive due process.

Second, Garcia argues that the City acted arbitrarily in refusing to reinstate him to
a bus driver position after he completed his drug treatment program, as required by the

---

[12]Although in Tonkovich the court questioned whether the "shock the conscience"
standard applies to all due process violations, we need not decide the question because we
conclude the City's conduct cannot be said to have been "arbitrary" under any standard.

Board's initial order. We do not agree. As noted above, Garcia's therapist recommended that he return to work. See Appendix at 34. The therapist therefore referred Plaintiff to Dr. Mulloy, the City's physician, for a return-to-work examination. See id. Dr. Mulloy approved Garcia's return to "light" duty (rather than normal duty) and with the restriction that he was "unable to drive motorcoach." Id. at 46. Following that recommendation, the City allowed Garcia to return to work, but as a security guard, rather than as a bus driver. See id. at 22; 34. Although Garcia is correct that the doctor may have been incorrect in her diagnosis, the Due Process Clause does not protect against "wrong" decisions, only "arbitrary" ones. The City's reliance on the doctor's assessment that Garcia was "unable to drive a motorcoach" was not arbitrary, even if the recommendation was not medically compelled. Therefore, we hold that the district court properly granted the City's motion for summary judgment on Garcia's substantive due process claim.

C

Garcia next argues that the City violated his liberty interest by "sidetrack[ing] his bus driving career in the most invidious way possible: by making a finding that he is 'unable to drive' a motorcoach." Garcia contends that since "[i]t is beyond dispute that a bus driver who is ruled 'unable to drive' is at the end of his career," the City violated his liberty interest. Appellant's Opening Brief at 21.

It is well settled in this circuit that a public employee can state a valid liberty

interest claim. <u>Workman v. Jordan</u>, 32 F.3d 475, 480 (10th Cir. 1994) (noting that pubic

employee "does have a liberty interest in his good name and reputation as it affects his

protected property interest in continued employment"); <u>Palmer v. City of Monticello</u>, 31

F.3d 1499, 1503 (10th Cir. 1994) ("[A]n accusation that a police officer falsified a

speeding ticket qualifies as a stigmatizing charge which amply supports that element of a

liberty interest violation."). A public employee's liberty interest, however, is limited. To

state a claim founded on a liberty interest, an employee must show

> that a public employer took action to terminate an employee based upon a public statement of unfounded charges of dishonesty or immorality that might seriously damage the employee's standing or associations in the community and foreclose the employee's freedom to take advantage of future employment opportunities

<u>Palmer</u>, 31 F.3d at 1503 (citation and internal quotation marks omitted); <u>see also</u> <u>Melton</u>

<u>v. City of Oklahoma City</u>, 928 F.2d 920, 927 (10th Cir. 1991) (stating the same

requirement).

We have imposed four requirements on a plaintiff-employee asserting a liberty

interest claim: the plaintiff must prove that: "(1) the defendant made a statement

impugning his or her good name, reputation, honor, or integrity; (2) the statement was

false; (3) the defendant made the statement in the course of termination proceedings or

the statement foreclosed future employment opportunities; and (4) the statement was

published." <u>Tonkovich v. Kansas Bd. of Regents</u>, 159 F.3d at 526.

We believe that Garcia does not satisfy these requirements. First, Garcia has

presented no evidence that the doctor's statement -- that he was "unable to drive a motorcoach" -- was published. The doctor made that statement only in internal medical documents for the City and there is no evidence that it was brought up before the Board (the Board reinstated Garcia's termination because of the default judgment, not because of his refusal to report to work). In the circumstances, Garcia cannot state a valid liberty interest claim. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547 n. 13 (1985) ("As the Court of Appeals found, the failure to allege that the reasons for the dismissal were published dooms this claim."); Lancaster v. Independent Sch. Dist. No. 5, 149 F.3d 1228, 1235 (10th Cir. 1998) ("Also fatal to plaintiff's liberty interest claim is the fact that the defendants made no public statements disparaging Lancaster or harming his standing or associations in the community. The Supreme Court has rejected the theory that the mere fact of dismissal, absent some publicizing of the reasons for the action, could amount to a stigma infringing one's liberty.") (citation and internal quotation marks omitted); Sipes v. United States, 744 F.2d 1418, 1421 (10th Cir. 1984) ("We conclude that plaintiff's termination did not implicate a liberty interest for two reasons. First, there is no evidence that the allegedly stigmatizing evidence was made public by the Government.").

Moreover, Garcia has not alleged that the statement involves a "false charge of sufficient opprobrium that would make the plaintiff an unlikely candidate for employment." Palmer, 31 F.3d at 1503. Such accusations involve charges of "dishonesty

-24-

or immorality." Id.; see also Melton, 928 F.2d at 927 (noting that "stigma is sufficient if it involves dishonesty, serious felony, manifest racism, serious mental illness, or the like") (citing Green v. St. Louis Housing Auth., 911 F.2d 65, 69 (8th Cir. 1990)). The doctor's statement here involves no such charge: the statement merely indicates that, at that point in time, Garcia was medically unable to drive a motorcoach. Indeed, Garcia can rebut the statement by getting a physician to attest that he is currently able to drive a motorcoach. The statement thus does not have a sufficient potential to cause stigma and therefore is not actionable. Cf. Hill v. Department of Air Force, 844 F.2d 1407, 1412 (10th Cir. 1998) (noting that the denial of a security clearance does not violate a liberty interest, because "[a] clearance does not equate with passing judgment upon an individual's character."); Sipes, 744 F.2d at 1422 (rejecting a liberty interest claim because the "plaintiff was discharged for being tardy, failing to schedule leave . . . , and for engaging in 'horseplay.' These reasons, even assuming they were made public by the Government, do not call into question plaintiff's good name, reputation, honor and integrity.").[13]

Accordingly, we affirm district court's summary judgment for the City.

---

[13]Garcia also argues that the Due Process Clause protects employees from occupational disbarment (although that right does not protect a specific job). See Appellant's Opening Brief at 17, 27-28 (citing Schware v. Board of Bar Exam'rs, 353 U.S. 232, 238 (1957)). According to Garcia, the City deprived him of his right to practice his occupation – bus driver – when it required him to work as a security guard. See id. at 28. Garcia's complaint, however did not allege occupational disbarment and he does not appear to have raised this argument below (nor did the magistrate make a recommendation on this issue). In the circumstances, Garcia waived any claim based on occupational disbarment. See Vitkus v. Beatrice Co., 127 F.3d 936, 946 (10th Cir. 1998) ("[W]e conclude that Beatrice failed to raise the issue below in the district court and, therefore, waived the right to argue it on appeal.").