**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 11, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARLIN BAER,

     Plaintiff - Appellant,

v.

SALT LAKE CITY CORPORATION;
LARRY BOWERS; GENO GARCIA;
ROSENDO NEVAREZ; DON
HUNSAKER; FAIFUAINA SCHWENKE-
TAUILIILI; COUNTY OF SALT LAKE;
TRENTON HINTZE; JEFFREY
STEGGALL,[1]

     Defendants - Appellees.

No. 16-4186
(D.C. No. 2:13-CV-00336-CW)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **McKAY**, and **MORITZ**, Circuit Judges.
_____

    This civil rights case arises from Marlin Baer's failure to appear at an arraignment

on misdemeanor charges. He appeals pro se from district court orders that granted the

---

[1] Because Baer has misspelled and/or misidentified many of the individual
defendants' names in the caption submitted to this court, the caption has been altered
to reflect the defendants' correct names.

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

defendants' motions to dismiss and for summary judgment. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

Baer is diabetic and a member of the Church of Jesus Christ of Latter-day Saints. He owns and operates a transportation service at the Salt Lake City (SLC) International Airport. On May 16, 2009, an ordinance enforcement agent from the SLC Ground Transportation Administration gave him four misdemeanor citations for failing to meet inspection and insurance requirements on commercial ground-transportation vehicles. The citations were docketed in the SLC Justice Court and an arraignment was scheduled. Baer failed to appear.

On June 7, 2009, at 4:55 p.m., SLC Airport Police Officer Trenton Hintze arrested Baer on a failure-to-appear warrant. Baer was transported to the Salt Lake County Adult Detention Center, arriving at 5:10 p.m. He was booked at 6:12 p.m. and released roughly four hours later at 9:20 p.m.

The next day, June 8, 2009, Baer called the jail, threatening to file a lawsuit. He complained that (1) he had been required to remove his shirt, thereby exposing his religious undergarment; (2) he had not been given food to remedy low blood-sugar levels; and (3) officers twice "told him to sit down and shut up." R., Vol. VI at 440.

A few days later, on June 12, 2009, Baer again called the jail. He stated that officers had "refused to give [him] any . . . food" for his diabetes. *Id.* at 264. But he admitted that his blood-sugar level was above normal when he arrived at the jail, and that when it was checked later in the evening by nursing staff around 7:30 p.m., it was

2

roughly in the range where his "doctor likes to have [him]." *Id.* at 251. Baer further complained of being "strip[ped] . . . down," *id.* at 259, "exposing [his] temple garment," and not being permitted to "put [his] shirt back on" right away, *id.* at 260. He stated he had been "manhandl[ed]" and "treat[ed] like garbage." *Id.* at 259, 260. He also expressed dissatisfaction with not being able to talk in public "about the Muslim people" or require them to "take off their turbans." *Id.* at 260.

Nearly four years later, Baer filed a pro se 42 U.S.C. § 1983 suit against the City; Larry Bowers (an SLC Airport Operations Ground Transportation Manager); Geno Garcia (a supervisor of SLC Airport Police Officer Hintze); Rosendo Nevarez (an SLC Airport Commercial Vehicle Inspector); Don Hunsaker (an SLC Airport Operations Landside Supervisor); Faifuaina Schwenke-Tauiliili (an SLC Airport Commercial Vehicle Inspector); the County of Salt Lake; and County Corrections Officer Jeffrey Steggall.[2] Baer averred that his arrest was "nothing less that CRIMINAL TREASON." R., Vol. I at 35. He cited a plethora of federal and state constitutional provisions and sought more than $ 25 million in damages for "unlawful citations, unlawful search and seizures, kidnapping by force, unlawful arrest and incarceration, negligence, molestation, possible conspiracy, cruel and unusual punishment and constant harassment and emotional and physical distress and abuse." *Id.* at 34. For the first time, Baer claimed that at the jail, "a [male] sheriff's deputy," apparently Officer Steggall, allegedly

---

[2] Although Baer also named Officer Hintze as a defendant, Baer failed to serve him. Baer didn't name the SLC ordinance-enforcement agent who cited him for the misdemeanor violations.

"touch[ed] his naked body to include his butt and then in his butt hole and . . . his penis and testacies [sic] while [a female deputy] was present." *Id.* at 41.

The City defendants moved to dismiss Baer's complaint or, alternatively, for summary judgment. A magistrate judge recommended granting the motion to dismiss, explaining that Baer had not (1) alleged how any of the individual City defendants personally participated in the denial of his rights; (2) alleged that he was injured by any specific municipal policy or custom; or (3) exhausted his Utah constitutional claims by filing an administrative notice with the City.

Baer untimely objected to the dismissal recommendation. Instead of addressing the substance of the report and recommendation, Baer complained that the magistrate judge lacked jurisdiction to consider his claims, was biased in favor of public officials, and had committed "fraud" and "Treason" by making a recommendation. Obj. to R. & R. at 3, *Baer v. Salt Lake City Corp.*, No. 2:13-CV-00336-CW (D. Utah Dec. 27, 2013), ECF No. 58. The district court nevertheless reviewed the recommendation de novo and adopted it in full, dismissing Baer's claims against the City defendants with prejudice.

The County defendants and Baer later filed cross-motions for summary judgment. The same magistrate judge recommended granting summary judgment in favor of the County defendants. In doing so, the magistrate judge concluded that Baer had provided no evidence of a constitutional violation, entitling Officer Steggall to qualified immunity. Specifically, regarding Baer's claim of an unconstitutional search, the magistrate judge found no credible evidence that Baer was strip searched or cavity searched. Baer's contrary statements, the magistrate judge said, were "so dubious, no reasonable juror

4

could believe them." R. & R. at 14, *Baer v. Salt Lake City Corp.*, No. 2:13-CV-00336-CW (D. Utah Sept. 7, 2016), ECF No. 234. Regarding the County's liability, the magistrate judge observed both that there was no underlying constitutional violation by a county officer or any evidence that some municipal policy or custom caused a constitutional violation. Finally, the magistrate judge concluded that Baer's claims under the Utah Constitution failed because he failed to file a notice of claim.

Baer untimely objected to the summary judgment recommendation. Instead of contesting the grounds on which summary judgment was recommended, Baer attacked the magistrate judge's impartiality, argued that the magistrate judge had no authority to consider dispositive motions, and described the proceedings as a "fiasco" and "a kangaroo court." Obj. to R. & R. at 2, 5, *Baer v. Salt Lake City Corp.*, No. 2:13-CV-00336-CW (D. Utah Sept. 29, 2016), ECF No. 235. The district court reviewed the magistrate judge's recommendation de novo and adopted it in full.

Baer now appeals.[3]

---

[3] Under this court's firm-waiver rule, appellate review is generally limited to the issues timely asserted in a party's objections to a magistrate judge's recommendations. *See Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008). Both of Baer's objections were untimely. Although the district court nevertheless reviewed the recommendations de novo, that review doesn't foreclose the firm-waiver rule's application. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999). But neither the City nor the County defendants seeks application of the firm-waiver rule. Consequently, they have forfeited the rule's application. *See Hicks v. Franklin*, 546 F.3d 1279, 1283 n.3 (10th Cir. 2008).

## DISCUSSION
## I. Pro Se Status

When a litigant proceeds without counsel, we construe his filings liberally, making "allowances for the pro se plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (brackets and internal quotation marks omitted). But there are limits to our solicitous interpretation of a pro se litigant's filings. We won't take responsibility to "serv[e] as the litigant's attorney in constructing arguments and searching the record" in support of his positions. *Id.* Thus, a pro se appellant must provide reasoned contentions supported by "citations to the authorities and parts of the record on which [he] relies." *Id.* at 840-41 (internal quotation marks omitted). Failure to do so may result in the waiver of the appellant's arguments. *Id.* at 841.

Here, Baer's appellate positions are often rambling and incoherent. And with one exception noted below, Baer doesn't address the substance of the district court's orders dismissing his claims against the City defendants and entering summary judgment in favor of the County defendants.

Even more problematic is that Baer has continued his "attempt[s] to impugn (without basis) the integrity of the [judiciary]," *id.* He claims that the federal district judge and the magistrate judge engaged in "abuses of judicial power" and "conspired to commit fraud upon the court," Aplt. Opening Br. at 8, 19. Baer also levels spurious accusations against the Salt Lake County District Attorney and the deputy district

6

attorney who represented the County defendants below.  He falsely accuses the deputy district attorney of "practicing law illegally," *id.* at 11, and "fraudulently submitt[ing] [documents] to the court," *id.* at 34.[4]  And he accuses the district attorney of "allow[ing] . . . fraudulent[ ] represent[ation]."  *Id.*  Personal attacks on the judiciary and a party's counsel are no substitute for reasoned arguments and may completely foreclose appellate review.  *See Garrett*, 425 F.3d at 841.

We exercise our discretion, however, to address those arguments Baer has adequately presented in his opening brief to correct Baer's misapprehension that he was denied the opportunity "to litigate his case fairly."  Aplt. Opening Br. at 38.[5]

## II.  Dismissal without a Hearing

Baer argues that the district court erred by dismissing his complaint against the City Defendants "without holding any hearing on the matter[ ] and without giving any reason for granting the[ir] . . . 12(b)(6) motion."  Aplt. Opening Br. at 8.  But a hearing on a motion to dismiss is not required.  *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007); *Greene v. WCI Holdings Corp.*, 136 F.3d 313, 315-16 (2d Cir. 1998).  And the

---

[4] Baer makes these accusations on his belief that the deputy district attorney "did not have an Oath of Office filed . . . prior to Jan. 2015," Aplt. Opening Br. at 8-9, despite the deputy district attorney producing in the district court her actual oath of office, which was dated October 24, 2011.

[5] To the extent Baer advances in his reply brief arguments not included in his opening brief, those arguments are waived.  *See Wheeler v. Comm'r*, 521 F.3d 1289, 1291 (10th Cir. 2008) (noting that "issues raised by an appellant for the first time on appeal in a reply brief are generally deemed waived").

district court explained that it granted the City defendants' motion for the reasons expressed in the magistrate judge's recommendation.

## III.  Default Judgment

Baer also contends the district court "erred in not granting [his] [motion for] default judgment against [Officer] Steggall" because "there was never an answer filed that was timely, . . . there was never a motion requesting additional time[,] . . . and there was never a hearing."  Aplt. Opening Br. at 8.  Baer's contention is meritless.  Officer Steggall timely answered.  *See* Fed. R. Civ. P. 12(a)(1)(A)(i) ("A defendant must serve an answer within 21 days after being served with the summons and complaint."); *id.* 5(b)(2)(C) ("[S]ervice is complete upon mailing.").  And no hearing was required to resolve Baer's motion.  *See* D. Utah Civ. R. 7-1(f) (indicating that unless otherwise directed by the district court, "motions . . . will be determined by the court on the basis of the written memoranda of the parties").

## IV.  The Magistrate Judge

Baer argues that a magistrate judge may not "preside and rule on a dispositive motion."  Aplt. Opening Br. at 8.  This contention also lacks merit.  When designated by a district judge, a magistrate judge is authorized to conduct hearings and issue recommendations on dispositive matters.  28 U.S.C. § 636(b)(1)(B); *see also Garcia v. City of Albuquerque*, 232 F.3d 760, 766 (10th Cir. 2000) ("28 U.S.C. § 636(b)(1)(B) does not require the consent of the parties."); *Bailey v. U.S. Dep't of Agric.*, 59 F.3d 141, 142 (10th Cir. 1995) ("It is clear that the magistrate judge had authority under 28 U.S.C.

8

§ 636(b)(1)(B) . . . to submit proposed findings of fact and a recommendation regarding the various motions at issue in this case.").

Baer further complains that the magistrate judge was biased and should have recused himself, as he denied "[a]ll of Baer's motions." Aplt. Opening Br. at 12. But it is well established that "adverse rulings cannot in themselves form the appropriate grounds for disqualification." *Green v. Branson*, 108 F.3d 1296, 1305 (10th Cir. 1997) (internal quotation marks omitted).[6]

Baer complains too that the magistrate judge "thr[e]w out properly noticed deposition testimony." Aplt. Opening Br. at 9. It isn't entirely clear what Baer is referring to. Baer may be contesting the magistrate judge's order granting the County defendants' May 22, 2015, motion to preclude Baer's use of depositions taken without notice to the County defendants. We review discovery rulings only for an abuse of discretion. *See Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 647 (10th Cir. 2008). "In the discovery context, the range of permissible choices available to the district court is notably broad." *Id.* Under Federal Rule of Civil Procedure 30(b)(1), "[a] party who wants to depose a person by oral questions must give reasonable written notice to every other party." Baer doesn't indicate how the magistrate judge's decision was an abuse of discretion, and we won't construct his argument or search the record to find support for his position. *See Garrett*, 425 F.3d at 840.

---

[6] Baer's claim that the magistrate judge was actually removed from the case due to bias is false, and results from his misreading and/or misunderstanding of the district court's docket entries.

Next, Baer protests the magistrate's judge's "threat[s]" to "incarcerat[e]" him "if he walked out of his own hearing" and to "sanction[ ]" him "if he filed any further documents on the city." Aplt. Opening Br. at 9. Baer provides few supporting details. "Due to the very nature of the court as an institution, it must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates." *Garrett*, 425 F.3d at 841 (internal quotation marks omitted). Baer has shown no error.

## V. Summary Judgment

Finally, the only substantive challenge arguably present in Baer's opening appellate brief concerns the scope of his search by Officer Steggall.[7] We begin by identifying the standards of review.

We review a grant of summary judgment de novo. *Hobbs ex rel. Hobbs v. Zenderman*, 579 F.3d 1171, 1179 (10th Cir. 2009). Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, *id.*, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). Where, as here, a defendant asserts a qualified-immunity defense, the burden shifts to the plaintiff to submit sufficient evidence showing (1) the violation of a constitutional right, that (2) was clearly established at the time of the violation. *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011). We may

---

[7] It is doubtful that Baer has adequately preserved this issue for appellate review. The only identifiable assertion he makes in his opening brief about the search is that the County "hid[ ] a witness that participated in [his] abuse (female officer present in strip search)." Aplt. Opening Br. at 4. Although inadequately briefed issues are ordinarily waived, *see Garrett*, 425 F.3d at 841, we will decide the search issue given the gravity of the specific claim against Officer Steggall.

10

decide which of these prongs to address first, and a plaintiff's failure to address either is fatal to his claim. *See Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 n.2 (10th Cir. 2009). To meet the "heavy, two-part burden" necessary to overcome a qualified-immunity defense, a plaintiff must allege facts sufficient to show a constitutional violation, and those facts must find support from admissible evidence in the record. *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015) (internal quotation marks omitted).

It is beyond cavil that the Fourth Amendment prohibits unreasonable searches by corrections officers. *See* U.S. Const. amend. IV; *Bell v. Wolfish*, 441 U.S. 520, 559 (1979) ("The test of reasonableness under the Fourth Amendment . . . requires a balancing of the need for the particular search against the invasion of personal rights that the search entails."). A pat-down search in a jail setting is generally recognized as reasonable, *see Chapman v. Nichols*, 989 F.2d 393, 397 (10th Cir. 1993), whereas indiscriminate strip and cavity searches of minor offenders not placed in the general jail population and not suspected of harboring weapons, drugs, or contraband are not reasonable, *see Archuleta v. Wagner*, 523 F.3d 1278, 1286 (10th Cir. 2008); *Hill v. Bogans*, 735 F.2d 391, 394-95 (10th Cir. 1984). The dispositive question here is what occurred during Baer's search.

According to Officer Steggall, he conducted only a pat-down search and "never touched Mr. Baer's penis, testicles, rear end, anus, rectum, or asked him to spread his butt cheeks for inspection." R., Vol. VI at 291. Further, Officer Steggall testified that he has never conducted a cavity search, he didn't strip search Baer, and he didn't recall the

11

presence of any other officer.  In a memo prepared just nine days after Baer's detention,

Officer Steggall described the search as follows:

> I pat searched [Baer] through his clothing, searched his waist band, sleeves
> and neck line. [ ] I searched his pockets and removed his belt.  I had him
> separate his feet and conducted a groin search including his pant legs and
> ankle area.  I then removed his hand-cuffs and had him remove his outer
> shirt, shoes and socks so the items could be searched.

*Id.* at 300.

Jail policy requires that all arrestees entering the jail will be searched "[t]o protect

the security of the Jail by detecting weapons, illegal drugs, and contraband and

identifying health problems."  *Id.* at 308.  Strip searches are defined as "the removal of

any clothing to allow the searching officer or others to view either or both female breasts,

the buttocks, or the pubic area of the arrestee."  *Id.* at 309.  Further, all strip searches

must be documented in the jail's "Strip Search Log."  *Id.* at 310.  Visual cavity searches

require authorization from a watch commander or a lieutenant, and digital cavity searches

require authorization from a captain or higher ranked officer and may be conducted only

by "non-Sheriff's Office medical staff" in a medical facility.  *Id.* at 327-28.  Cavity

searches must also be documented.  There is no record of Baer being strip or cavity

searched.

In contrast, Baer suggested during his deposition that he was subjected to a digital

cavity search.  He also indicated that he viewed a "pat down for weapons and [a]

search[ ] of [his] pockets" as "molestation."  *Id.* at 405.  But Baer also admitted that on

May 10, 2013—just three days before filing his complaint—he wrote Officer Steggall a

letter which didn't mention anything about Steggall touching his penis, testicles, or anus, or performing a cavity inspection. *Id.* at 421-22, 433.

Generally speaking, uncorroborated testimony, such as Baer's, may alone be sufficient to avoid summary judgment. *See Evers v. Regents of Univ. of Colo.*, 509 F.3d 1304, 1309 (10th Cir. 2007); *accord Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010) ("[W]e long ago buried—or at least tried to bury—the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment because it is self-serving. If based on personal knowledge or firsthand experience, such testimony can be evidence of disputed material facts." (citation and internal quotation marks omitted)). "However, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1058 (10th Cir. 2009) (brackets and internal quotation marks omitted). In other words, summary judgment can't be avoided where the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Similarly, the non-moving party can't create a jury triable issue if his evidence is either so "blatantly contradicted by the record[ ] . . . that no reasonable jury could believe it," *Scott v. Harris*, 550 U.S. 372, 380 (2007), or "the factual context renders [the non-movant's] claim implausible," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Here, the record evidence renders Baer's uncorroborated account of his search at the jail implausible. Most significantly, we note that Baer twice telephoned the jail to

13

complain about his treatment but never once suggested he was strip or cavity searched. Indeed, he stated he was required to remove only his outer shirt. And in one recorded telephone call, Baer complained about Muslims and turbans. His other telephonic complaints concerned being denied food for his diabetes and being told to "sit down and shut up," R., Vol. VI at 440. He never described his search in terms that even remotely resemble the allegations in his complaint or his deposition.

Moreover, Baer admitted in his deposition that when he wrote Officer Steggall three days before filing this lawsuit, he didn't mention being strip or cavity searched.

Thus, given Officer Steggall's testimony denying Baer's accusations, the lack of any jail record of a strip or cavity search, and Baer's failure to claim he was strip or cavity searched under circumstances in which one would expect such a claim to be made, no reasonable jury could find a violation of Baer's Fourth Amendment rights. Therefore, the district court properly granted summary judgment to Officer Steggall based on qualified immunity. And because "[a] municipality may not be held liable where there was no underlying constitutional violation by any of its officers," *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993), the district court properly granted summary judgment to the County.

Affirmed.

Entered for the Court


Nancy L. Moritz
Circuit Judge

14