**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-10184 |
| *Plaintiff-Appellee,* | D.C. No. 4:20-cr-00051- JAS-DTF |
| v. | |
| DEMETRIUS VERARDI RAMOS, AKA Demetrius Ramos, | OPINION |
| *Defendant-Appellant.* | |

Appeal from the United States District Court
for the District of Arizona
James Alan Soto, District Judge, Presiding

Argued and Submitted November 18, 2022
Phoenix, Arizona

Filed April 10, 2023

Before: Jay S. Bybee, John B. Owens, and Daniel P. Collins, Circuit Judges.

Opinion by Judge Owens;
Partial Concurrence and Partial Dissent by Judge Collins

# SUMMARY[*]

## Criminal Law

The panel affirmed the district court's denial of Demetrius Verardi Ramos's motion to suppress his post-arrest statements in a case in which a jury convicted Ramos of one count of conspiracy to transport, for profit, noncitizens who have entered or remain in the United States unlawfully; four counts of harboring such noncitizens for profit; and three counts of transportation of such noncitizens for profit.

Ramos argued that his statements were involuntary because, just prior to the interrogation, an agent had shown him a plastic baggie containing drugs and threatened him with drug charges if he did not cooperate. After holding an evidentiary hearing, a magistrate judge issued a report recommending that the district court deny the motion to suppress.

The panel held that the district court did not abuse its discretion by wholly adopting the magistrate judge's report and recommendation. The panel wrote that the district court did what the Federal Magistrates Act requires: it indicated that it reviewed the record de novo, found no merit to Ramos's objections, and summarily adopted the magistrate judge's analysis in his report and recommendation. The panel emphasized that this court presumes that district courts conduct proper de novo review where they state they have done so, even if the order fails to specifically address a

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

party's objections. Rejecting Ramos's assertion that the district court's "bare assertion" that it reviewed de novo is insufficient because the order was "mere boilerplate" and failed to address his specific objections, the panel noted that the district court asserted it conducted de novo review not only in its order adopting the magistrate judge's report and recommendation, but also in its order denying the motion for reconsideration. More importantly, the district court had no obligation to provide individualized analysis of each objection. Because the district court said it independently reviewed the record and there is no evidence indicating otherwise, the panel had no reason to second-guess its assertion of de novo review.

On the merits, Ramos contended that the district court erred in denying the motion to suppress because it mistakenly adopted the magistrate judge's "improper speculation regarding the contents of the baggie shown to" Ramos when he was detained. The panel disagreed. The magistrate judge did not, nor was he required to, make a proposed finding about the baggie; rather, he only had to consider whether Ramos's "will was overborne" under the totality of the circumstances. The panel wrote that, after observing the implausibility of Ramos's testimony and considering Ramos's verbal and signed *Miranda* waiver, age, education level, and fluency in English, the magistrate judge properly recommended finding the statements made during the interrogation voluntary. Moreover, the panel could not hold that the magistrate judge was wrong to reject Ramos's testimony, as the report and recommendation provided ample reason to find Ramos not credible, and the rest of the record supports the magistrate judge's analysis. The video footage does not clearly show the contents of the baggie, and two agents denied ever

threatening Ramos. Because there are two permissible views of the evidence, the magistrate judge's choice between them, with which the district court agreed, cannot be clearly erroneous.

The panel addressed Ramos's challenges to the denial of his motion to suppress evidence on *Miranda* grounds and to a special condition of his supervised release in a concurrently filed memorandum disposition, in which it affirmed in part and vacated and remanded in part.

Judge Collins concurred in the judgment in part and dissented in part. He concurred in the court's accompanying unpublished memorandum disposition. He dissented from the majority's conclusion that the district court properly denied the motion to suppress insofar as it was directed at Ramos's confession in jail after his arrest. He wrote that a presumption that the district court conducted a proper de novo review is not warranted here because (1) the magistrate judge's report contains an obvious factual error concerning a critical issue and the error was raised in Ramos's objections; (2) there are good reasons to suspect the district court's order adopting the magistrate judge's report here is, for all practical purposes, a 4½-page rubberstamp; (3) this court has previously admonished the same district judge for using boilerplate orders in ruling on objections to magistrate judges' reports, but to no avail; (4) the underlying issue here is one of constitutional dimension; and (5) the panel cannot say that the error was harmless. He would remand with instructions to re-examine the matter and, if warranted, to grant a new trial.

**COUNSEL**

Elizabeth J. Kruschek (argued), Assistant Federal Public Defender; Jon M. Sands, Federal Public Defender, District of Arizona; Federal Public Defender's Office; Phoenix, Arizona; for Defendant-Appellant.

Robert L. Miskell (argued), Shelley K.G. Clemens, and Terry M. Crist III, Assistant United States Attorneys; Christina M. Cabanillas, Deputy Appellate Chief; Gary M. Restaino, United States Attorney, District of Arizona; Office of the United States Attorney; Tucson, Arizona; for Plaintiff-Appellee.

## OPINION

OWENS, Circuit Judge:

Defendant-Appellant Demetrius Ramos appeals from his jury conviction and sentence for one count of conspiracy to transport, for profit, noncitizens who have entered or remain in the United States unlawfully, four counts of harboring such noncitizens for profit, and three counts of transportation of such noncitizens for profit, all in violation of 8 U.S.C. § 1324.  We have jurisdiction under 28 U.S.C. § 1291 and affirm.[1]

## I.  BACKGROUND

### A.  Arrest and Interrogation

On December 3, 2019, U.S. Border Patrol agents stopped Ramos in his vehicle in the border town of Douglas, Arizona and arrested him for transporting noncitizens under 8 U.S.C. § 1324.  The agents placed Ramos in a holding cell after arriving at the Border Patrol station.  While getting fingerprinted, Ramos asked Agent Daniel Regan to retrieve his prescription medication located inside his vehicle.

Based on video footage, which contains no audio, Agent Robert Marrufo visited Ramos inside his holding cell at around 3:40 a.m.  About forty minutes later, the video footage shows Agent Marrufo returning to the holding cell, showing Ramos a plastic baggie, and having a short

---

[1] We address Ramos's challenges to the denial of his motion to suppress evidence on *Miranda* grounds and to a special condition of his supervised release in a concurrently filed memorandum disposition, in which we affirm in part and vacate and remand in part.

discussion with him.  The video then shows Agent Marrufo leaving the cell, followed by Ramos.

Shortly thereafter, Agents Marrufo and Jesus Barron conducted a *Mirandized* interview in an interrogation room. The agents encouraged Ramos to tell the truth, saying that "honesty goes a long way" and that "[t]here's an old saying [that] the truth will set you free."  When asked about the events that had led up to his arrest, Ramos admitted he was offered $1,000 per person to transport people from Douglas to Phoenix but claimed that he was not aware that the passengers were undocumented.  He also stated that he had transported people for pay on "many" occasions prior and that he was instructed to buy a separate phone for this purpose.

When asked about his citizenship status, Ramos confirmed that he was a Brazilian citizen and had overstayed his visa.  Ramos expressed concern for himself and his family, telling the agents that he "[didn't] want to get deported."

Multiple times throughout the interrogation, Ramos attempted to negotiate with the agents, asking them for help in return for his cooperation.  Ramos claimed that he knew "the bosses of this area" and that he was a "big piece of the puzzle."  He also expressed a willingness to "get further information" for the agents.  In response to Ramos's repeated attempts to cut a deal, the agents reiterated that they could not make any promises and that the "only thing [they] could] do . . . is to take down the information" from the interrogation and relay it to someone else.  Ramos asked the agents to "[l]et [him] talk to somebody else then."  When Agent Barron tried to conclude the interrogation, the following exchange took place:

> BPA BARRON: So all the statements that you made today were voluntarily? Were you forced or coerced during your declaration? Did we force you to talk? Did we force you to say anything?
>
> MR. RAMOS: No, but I thought that I was going to get --
>
> BPA BARRON: All right.
>
> MR. RAMOS: -- something in return.
>
> BPA BARRON: Okay. So all the questions that you basically stated were voluntarily?
>
> SBPA MARRUFO: Yes or no?
>
> MR. RAMOS : I -- kind of, man, but I thought I was going to get something in return. I thought I was going to --
>
> SBPA MARRUFO: No. Like I -- like I told you, I never -- we never promised you anything.
>
> MR. RAMOS: You kind of did. You said, hey, man, this stuff, I'm going to take it, you just tell the truth.

After the agents again reminded Ramos that they "never promised [him] anything," Ramos offered to give them "all the information" and to wear a "bug."

The agents ended the interrogation at 5:14 a.m. During the nearly hour-long interview, no one mentioned the plastic baggie that Agent Marrufo had held during his second visit to the holding cell.

**B.  Motion to Suppress and Evidentiary Hearing**

After his indictment, Ramos moved to suppress, among other things, his statements made during the interrogation. He argued that his statements were involuntary because, just prior to the interrogation, Agent Barron had shown him a plastic baggie containing drugs and threatened him with drug charges if he did not cooperate.  In its response to the motion, the government denied that such a conversation ever took place.

The magistrate judge held an evidentiary hearing regarding the motion to suppress, at which the parties offered conflicting testimony.  With regards to the events leading up to his arrest, Ramos testified that his friend "Gabriel" had offered him a flat rate of $1,000 to pick up passengers and take them Christmas shopping.  Ramos initially testified that "Gabriel" asked him to take the passengers from Douglas to Phoenix, but later changed his story, claiming that he was planning on taking them to Tucson, where they would sleep overnight, go Christmas shopping the next morning, and then return to Douglas.  Ramos also claimed that "Gabriel" provided him a separate cellphone for the job because it was "easier to communicate with [the] same cellphone company."  According to Ramos, "Gabriel" asked him to pick up the passengers since Uber "didn't do that anymore because it's close to the border."  When asked on cross-examination why he claimed to know the "bosses of this area" during his interrogation, Ramos testified that he had been exaggerating and lying to ensure that he went home that night.

Ramos also testified about the video footage of his holding cell.  He claimed that Agent Barron[2] came to his holding cell and told him that he would have to talk to the agents or else it was "going to be very bad" for him. According to Ramos, Agent Barron promised Ramos that he could go home that night if he cooperated with the agents. Ramos also testified that, about half an hour later, Agent Barron returned with a plastic baggie containing a substance that tested positive for drugs and said that, because they found the baggie in Ramos's car, they could "use it" against him if he did not cooperate with the agents.  Immediately thereafter, Agent Barron allegedly asked Ramos whether he would be willing to talk to the agents, to which Ramos agreed.

The government offered a different account of that evening and the plastic baggie.  Without having watched the video footage, Agent Marrufo claimed that he—not Agent Barron—visited Ramos in the holding cell.  Regarding the first interaction in the holding cell, Agent Marrufo testified that he went to conduct a welfare check and to verify Ramos's identity after discovering that he was a Brazilian citizen who had overstayed his visa.  Regarding the second interaction in the holding cell, Agent Marrufo testified that he did not remember having a baggie in his hand.

Agent Barron also testified at the suppression hearing and claimed that he never made any threats to Ramos or forced Ramos to cooperate.

---

[2] Ramos originally testified that Agent Barron visited him in the holding cell.  On appeal, the parties do not dispute that the agent who visited Ramos was Agent Marrufo.

**C. The Magistrate Judge's Report and Recommendation**

After the evidentiary hearing, the magistrate judge issued a twenty-page report recommending that the district court deny Ramos's motion to suppress.  In so recommending, the magistrate judge explained why he did not find Ramos's testimony credible.  First, the magistrate judge noted that Ramos contradicted himself throughout his testimony and "told an untenable story."  For example, Ramos initially testified that he was taking the passengers Christmas shopping in Phoenix but then later claimed they were headed to Tucson, where the passengers would sleep overnight and go shopping the next day.  The magistrate judge also noted that Ramos's story seemed implausible given that he did not have his driver's license and was wearing hospital scrubs on the night of his arrest.  Second, the magistrate judge observed that Ramos's "demeanor was not that of an honest but nervous witness, but instead was that of a fabricator."  Third, the magistrate judge opined that Ramos's claim that his confession was coerced was inconsistent with his demeanor and numerous attempts to negotiate with the agents during the interrogation.

By contrast, the magistrate judge observed that the agents' testimony credible and consistent with the interrogation transcript.  Addressing the plastic baggie, the magistrate judge wrote in a footnote that "[t]he Government does not explain the bag, but there are alternative explanations.  The most likely of which is that the bag contained medicine Defendant had requested."  The magistrate judge also considered Ramos's age, education level, fluency in English, over ten years of residency in the United States, and access to food and water the night of his interrogation.  Based on the totality of these circumstances,

the magistrate judge recommended finding that Ramos's confession was voluntary.

Ramos timely filed objections to the magistrate judge's report and recommendation. In objecting to the magistrate judge's finding on voluntariness, Ramos reiterated that his interrogation had been coerced and argued that the magistrate judge had improperly speculated about the contents of the baggie, thereby relieving the government of its burden of proof.

### D. The District Court's Orders Regarding the Motion to Suppress

The district court adopted the magistrate judge's report and recommendation in its entirety. In its order, the district court wrote, "Upon *de novo* review of the record and authority herein, the Court finds Defendant's objections to be without merit [and] rejects those objections . . . ."

In response to the district court's order adopting the magistrate judge's report and recommendation, Ramos filed a three-page motion for reconsideration. Without citing any authority, Ramos argued that the district court failed to conduct de novo review because the order did not discuss any facts or points of law. He also noted that the district court addressed "waiver" even though, according to Ramos, the case raised no waiver issue. The motion for reconsideration made no mention of the baggie.

The district court denied the motion for reconsideration, reiterating that it did conduct de novo review. The court noted that "'[i]t is common practice among district judges . . . to [issue a terse order stating that it conducted a *de novo* review as to objections] . . . and adopt the magistrate judges' recommended dispositions when they find that magistrate

judges have dealt with the issues fully and accurately and that they could add little of value to that analysis.' *Garcia v. City of Albuquerque*, 232 F.3d 760 (10th Cir. 2000)" (alteration in original).

## E.  Trial and Sentencing

The case proceeded to trial, where Agent Marrufo was shown video footage of the holding cell for the first time. After watching the footage, Agent Marrufo testified that he never showed Ramos a baggie "per se" and that, if he had one in his hand during their conversation, he was "doing something else with it."  He also testified that he never threatened Ramos with drug charges.  When asked to identify the bag, Agent Marrufo stated that it looked like an "evidence bag."  According to Agent Marrufo, he had handled "a lot of evidence that night" and speculated that he was going to drop off the evidence after visiting Ramos's cell but prior to going to the interrogation room.  When defense counsel asked Agent Marrufo to identify the "white stuff on the bottom of that bag," he was unable to do so, claiming that he could barely see the bag, "let alone what's in the bag."

The jury convicted Ramos on eight counts: one count of conspiracy to transport, for profit, noncitizens who have entered or remain in the United States unlawfully, four counts of harboring such noncitizens for profit, and three counts of transportation of such noncitizens for profit, all in violation of 8 U.S.C. § 1324.  At sentencing, the district court imposed concurrent terms of four months in custody and four months of home detention.  The district court also placed Ramos on three years of supervised release subject to special conditions.  Ramos timely appealed.

## II.  DISCUSSION

### A.  Standard of Review

We review a district court's adoption of a magistrate judge's report and recommendation for abuse of discretion. *Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002).  "A district court abuses its discretion when it fails to apply the correct legal standard or bases its decision on unreasonable findings of fact."  *Briseño v. Henderson*, 998 F.3d 1014, 1022 (9th Cir. 2021) (cleaned up); *see also United States v. Manchester Farming P'ship*, 315 F.3d 1176, 1181 (9th Cir. 2003).   Under this highly deferential standard, we must uphold "a district court's determination that falls within a broad range of permissible conclusions, provided the district court did not apply the law erroneously."  *Lam v. City of San Jose*, 869 F.3d 1077, 1084 (9th Cir. 2017) (citation omitted). We review the voluntariness of a confession de novo and any underlying factual findings for clear error.  *United States v. Heller*, 551 F.3d 1108, 1112 (9th Cir. 2009).

### B.  The District Court Did Not Abuse its Discretion by Wholly Adopting the Magistrate Judge's Report and Recommendation

Under the Federal Magistrates Act, a district court may designate a magistrate judge to conduct an evidentiary hearing and submit proposed findings of fact and recommendations for the disposition of a motion to suppress. 28 U.S.C. § 636(b)(1)(B).  Within fourteen days, any party may file written objections to the report.  *Id.* § 636(b)(1)(C). If an objection is made, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  *Id.*; *see also* Fed. R. Civ. P. 72(b)(3); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.

2003) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made,* but not otherwise."). After conducting de novo review, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "In providing for a de novo determination . . . Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." *United States v. Raddatz*, 447 U.S. 667, 676 (1980) (internal quotation marks omitted).

Under this statutory scheme, the district court did what § 636(b) requires: it indicated that it reviewed the record de novo, found no merit to Ramos's objections, and summarily adopted the magistrate judge's analysis in his report and recommendation. We have presumed that district courts conduct proper de novo review where they state they have done so, even if the order fails to specifically address a party's objections. *See Wang v. Masaitis*, 416 F.3d 992, 1000 (9th Cir. 2005) (holding that "[t]here [was] no reason to question the de novo review done by" the district court based on an order stating it "reviewed the Petition and other papers along with the attached Report and Recommendation . . . as well as petitioner's objections and respondent's response to petitioner's objections, and has made a de novo determination"); *Holder v. Holder*, 392 F.3d 1009, 1022 (9th Cir. 2004) ("The district court expressly stated in its order that it adopted the magistrate judge's recommendations only after having undertaken a de novo review of the record . . . . The district court's approach fully complied with the statutory requirements in using the magistrate judge's assistance in this case."); *N. Am. Watch Corp. v. Princess*

*Ermine Jewels*, 786 F.2d 1447, 1450 (9th Cir. 1986) (holding that the district court satisfied de novo review because it provided a statement that it had reviewed the record and magistrate judge's report and recommendation before reaching its conclusion).**[3]**

---

[3] We have also upheld similar district court orders in unpublished cases. *See, e.g.*, *United States v. Drapel*, 418 F. App'x 630, 630-31 (9th Cir. 2011); *Brook v. McCormley*, 837 F. App'x 433, 435-36 (9th Cir. 2020); *Payne v. Marsteiner*, No. 21-55296, 2022 WL 256357, at *1 (9th Cir. Jan. 26, 2022).

Additionally, our sister circuits have upheld district court orders that adopt the magistrate judge's report and recommendation without additional analysis of case-specific facts or law. *See, e.g.*, *Elmendorf Grafica, Inc. v. D.S. Am. (E.), Inc.*, 48 F.3d 46, 49-50 (1st Cir. 1995) (noting that the appellant had "called no authority to [the court's] attention holding that, in order to demonstrate compliance with § 636's *de novo* requirement, a district court must make findings and rulings of its own rather than adopting those of the magistrate judge"); *Murphy v. Int'l Bus. Machs. Corp.*, 23 F.3d 719, 722 (2d Cir. 1994) (per curiam) ("We do not construe the brevity of the order [adopting the magistrate judge's report] as an indication that the objections were not given due consideration, especially in light of the correctness of that report and the evident lack of merit in [the plaintiff's] objections."); *United States v. Jones*, 22 F.4th 667, 679 (7th Cir. 2022) (noting that district courts may fulfill their obligation under § 636 by informing the appellate court that they conducted de novo review and that "in some cases, a district court may even adopt the magistrate's report and recommendation in its entirety without writing its own opinion"); *Gonzales-Perez v. Harper*, 241 F.3d 633, 636-37 (8th Cir. 2001) (rejecting the plaintiff's argument that the district court failed to conduct de novo review of the record because its order did not address all arguments); *Garcia v. City of Albuquerque*, 232 F.3d 760, 766 (10th Cir. 2000) ("[N]either 28 U.S.C. § 636(b)(1) nor Fed. R. Civ. P. 72(b) requires the district court to make any specific findings; the district court must merely conduct a *de novo* review of the record.").

Only in limited circumstances have we questioned a district court's de novo review of a magistrate judge's report and recommendation. For example, we have reversed and remanded district court orders adopting the magistrate judge's recommendation because it was clear that the district court failed to conduct review on the whole record. *See United States v. Remsing*, 874 F.2d 614, 616-18 (9th Cir. 1989) (reversing and remanding because the transcript of the evidentiary hearing was unavailable when the district court conducted its review); *Orand v. United States*, 602 F.2d 207, 209 (9th Cir. 1979) (reversing and remanding because, in part, the "stenographic notes from the magistrate's hearing were not fully transcribed until . . . three months after the district court adopted the magistrate's report and recommendation"). We have also vacated and remanded the district court's order where it clearly applied the wrong standard of review. *See CPC Pat. Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 810 (9th Cir. 2022) (vacating and remanding a district court order because it expressly reviewed the magistrate judge's decision for clear error rather than de novo).

Ramos argues that this is one of those limited circumstances where we should question the district court's repeated assertions that it conducted de novo review. According to Ramos, the district court's "bare assertion" that it reviewed de novo is insufficient because the order was "mere boilerplate" and failed to address his specific objections. But the district court asserted that it conducted de novo review not only in its order adopting the magistrate judge's report and recommendation, but also in its order denying the motion for reconsideration.

More importantly, as discussed above, the district court had no obligation to provide individualized analysis of each

objection.  *See Wang*, 416 F.3d at 1000 (affirming a cursory district court order summarily adopting, without addressing any objections, a magistrate judge's report and recommendation); *Holder*, 392 F.3d at 1022 (holding that the district court's approach "fully complied with the statutory requirements" because it "expressly stated in its order that it adopted the magistrate judge's recommendations only after having undertaken a de novo review of the record, the Second Report and Recommendation, Jeremiah's objections, and Carla's responses"); *N. Am. Watch Corp.*, 786 F.2d at 1450 (holding that the district court "satisfied the de novo standard of 28 U.S.C. § 636" by noting it had "reviewed the complaint, counter-complaints, all the records and files, . . . and the . . . Report and Recommendation of the United States Magistrate").

The cases on which Ramos relies for this point are inapposite.  Two of the three cited cases involved *new* claims raised for the first time in a party's objections to the magistrate judge's report and recommendation.  *See Brown*, 279 F.3d at 745 (holding that the district court abused its discretion by failing to address the pro se habeas petitioner's equitable tolling argument raised for the first time in his objections to the magistrate judge's report and recommendation (citing *United States v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000)); *United States v. Cha*, 597 F.3d 995, 1003 n.7 (9th Cir. 2010) (holding that the district court's "boilerplate language" was not enough when addressing the government's waiver argument raised for the first time in its objections).   By contrast, Ramos's objection—that the magistrate judge erred in finding that he was not threatened with the baggie and drug charges—is a

reformulation of his argument from his motion to suppress.[4]
The third (unpublished) case Ramos cites is also
distinguishable because, there, the *magistrate judge* failed to
address one of the defendant's arguments in his report and
recommendation. *United States v. Jones*, 837 F. App'x 423,
424 (9th Cir. 2021). But here, Ramos does not contend that
the report and recommendation itself failed to address an
argument raised in his motion to suppress.

The dissent agrees with Ramos that the district court's
order was procedurally deficient and believes that the district
court failed to conduct de novo review, as evidenced by the
"rubberstamp" order. Dissent at 33-35. But, like Ramos, the
dissent cites no caselaw from any court requiring the district
court to provide more analysis or case-specific reasoning
when summarily adopting a magistrate judge's report and
recommendation, absent newly raised objections. The only
evidence that the dissent cites is the district court's nearly
identical orders in other cases. Dissent at 34-35. The dissent
finds it of no matter that the district court confirmed not only
once (in its order adopting the magistrate judge's report and
recommendation) but twice (in its order denying Ramos's
motion for reconsideration) that it conducted de novo review
of the case. When the district court said it independently
reviewed the record and there is no evidence indicating

---

[4] Ramos raised an additional objection, arguing that the magistrate judge
made an improper inference about the contents of the plastic baggie,
thereby relieving the government of its burden of proof. But, as we
explain below, the magistrate judge did no such thing. The magistrate
judge noted that the government did not explain the bag but listed the
many factors on which the government relied to prove the confession
was voluntary by a preponderance of the evidence.

otherwise, we have no reason to second-guess its assertion of de novo review.[5]  *See Wang*, 416 F.3d at 1000.

## C. The District Court Did Not Err in Denying Ramos's Motion to Suppress on Voluntariness Grounds

Turning to the merits, Ramos contends that the district court erred in denying his motion to suppress because it mistakenly adopted the magistrate judge's "improper speculation regarding the contents of the baggie shown to Mr. Ramos when he was detained."  We disagree and affirm the district court's denial of Ramos's motion to suppress his post-arrest statements and the underlying analysis in the magistrate judge's report and recommendation.

The magistrate judge did not, nor was he required to, make a proposed finding about the contents of the baggie; rather, he only had to consider whether Ramos's "will was overborne" under the totality of the circumstances.  *United States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988); *see also Lego v. Twomey*, 404 U.S. 477, 489 (1972) ("[T]he prosecution must prove at least by a preponderance of the evidence that the confession was voluntary.").  After observing the implausibility of Ramos's testimony and

---

[5] Ramos's motion for reconsideration argued that the district court failed to conduct de novo review because the order adopting the report and recommendation stated that "as to any new . . . arguments . . . not timely . . . raised before [the magistrate judge], the Court exercises its discretion to not consider those matters and considers them waived" even though, according to Ramos, the case raised no waiver issue.  But this argument misses the point.  The fact that the order contained extraneous language does not negate the district court's multiple assertions that it conducted de novo review and the magistrate judge's proper analysis in recommending denial of the motion to suppress.

considering Ramos's verbal and signed *Miranda* waiver, age, education level, and fluency in English, the magistrate judge properly recommended finding the statements made during the interrogation voluntary.

Moreover, we cannot hold that the magistrate judge was wrong to reject Ramos's testimony. *See United States v. Nelson*, 137 F.3d 1094, 1110 (9th Cir. 1998) ("This court gives special deference to the district court's credibility determinations."). The magistrate judge's report and recommendation provided ample reason to find Ramos not credible: (1) Ramos contradicted himself throughout his testimony, such as claiming that he was taking the passengers to Phoenix but later testifying that their destination was Tucson; (2) he told an "untenable story" where he was offered $1,000 to take the passengers "Christmas shopping," even though he did not have his driver's license and was wearing scrubs on the night of his arrest; (3) he offered claims that were inconsistent with his repeated requests during the interrogation asking what the "agents could do for him"; and (4) the magistrate judge observed that, during his testimony, Ramos's "demeanor was . . . that of a fabricator." Ramos's testimony bore many of the hallmarks of an unreliable witness. *See generally* Ninth Circuit Manual of Model Criminal Jury Instructions § 1.7 (2022) ("In considering the testimony of any witness, you may take into account . . . the witness's manner while testifying," "the witness's interest in the outcome of the case," "whether other evidence contradicted the witness's testimony," and "the reasonableness of the witness's testimony in light of all the evidence[.]").

The rest of the record also supports the magistrate judge's analysis. The video footage—the only other piece of evidence that Ramos cites to support his claim—only

confirms that Agent Marrufo had a baggie in his hand when talking to Ramos. But this footage is without audio and does not clearly show the contents of the baggie. And, in contrast to Ramos's account, Agents Marrufo and Barron denied ever threatening Ramos. Further, despite extensive back and forth between Ramos and the agents, the transcript of the interrogation that immediately followed Agent Marrufo's visit makes no mention of the plastic baggie or purported drug charges. Because there are "two permissible views of the evidence," the magistrate judge's choice between them, with which the district court agreed, cannot be clearly erroneous. *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985). And without his claim that he was threatened, Ramos's "argument that his confession was coerced is meritless." *United States v. Wolf*, 813 F.2d 970, 975 (9th Cir. 1987).

The dissent argues that the district court's order denying the suppression motion was inadequate on the merits because it relied on a clearly erroneous proposed finding of fact in the magistrate judge's report and recommendation: "that the 'most likely' reason why Marrufo had the baggie was that it contained the medicine that Ramos had requested." Dissent at 31. According to the dissent, this finding was clearly erroneous because Agent Marrufo never actually gave the baggie to Ramos and Agent Regan testified that he was the one who gave Ramos his medication. Dissent at 31. But this mischaracterizes the magistrate judge's report, which accurately stated that the government failed to explain the bag but noted there were "alternative explanations," speculating "[t]he most likely of which is that the bag contained medicine Defendant had requested." Furthermore, as discussed above, the magistrate judge was not required to propose a factual finding about the contents

of the bag. The question before the magistrate judge was whether Ramos's confession was voluntary, which the magistrate judge addressed after considering the totality of the circumstances and rejecting Ramos's testimony from the motion to suppress hearing—the only evidence supporting the allegation of fabricated drug charges.

The dissent's selective focus on the plastic baggie thus ignores the actual question that was before the magistrate judge and district court: whether the confession was voluntary. Critical to that question was whether Ramos was credible. By ignoring the magistrate judge's detailed analysis finding Ramos not credible, the dissent improperly discounts the standard of review, which is especially important in this context: "Deference to the district court's factual finding is especially warranted here when the critical evidence is testimonial; the 'judge was in the unique position to observe the demeanor of both [the defendant] and the police officers while we have only the cold record, which is sterile by comparison.'" *Wolf*, 813 F.2d at 975 (quoting *United States v. Hood*, 493 F.2d 677, 680 (9th Cir. 1974)).

## D. Conclusion

Because the district court was not obligated to explicitly address Ramos's objections, we hold that the district court did not abuse its discretion by adopting the magistrate judge's report and recommendation. On the merits, we also affirm the district court's denial of the suppression motion on voluntariness grounds.

**AFFIRMED.**

COLLINS, Circuit Judge, concurring in the judgment in part and dissenting in part:

I concur in the court's accompanying unpublished memorandum disposition, which holds that (1) the district court properly denied Defendant Demetrius Verardi Ramos's motion to suppress insofar as it was directed at the statements that he made prior to his arrest; and (2) the case must be remanded so that the written judgment's description of supervised release conditions can be properly conformed to the orally pronounced sentence. But I respectfully dissent from the majority's conclusion that the district court properly denied the motion to suppress insofar as it was directed at Ramos's confession in jail after his arrest. As to that issue, I would instead remand with instructions to re-examine the matter and, if warranted, to grant Ramos a new trial.

**I**

After Ramos was arrested, he was taken to a Border Patrol Station where agents placed him into a holding cell. The cell contained a video camera that recorded events within the cell, but without any audio. The video recording shows that, at approximately 3:41 AM, Agent Robert Marrufo visited Ramos's cell and spoke with him for about two minutes before leaving. The recording further shows that, at approximately 4:23 AM, Marrufo returned to Ramos's cell. This time, Marrufo spoke with Ramos for approximately 40 seconds, and for about half of that conversation, Marrufo was prominently holding out towards Ramos a clear plastic baggie that contained some substance at the bottom. Although the video is grainy, the plastic baggie contained at the top what appears to be a pinkish strip that is consistent with a Ziploc-type strip. Towards the end

of the conversation, Marrufo gestured with his right arm in a way that seemingly indicated that Ramos should follow him. At approximately the same time, Ramos moved to grab his shoes, put them on, and left the cell after Marrufo.  Ramos proceeded to an interview room, where he waived his *Miranda* rights and gave a recorded confession.

Both Ramos and Marrufo testified at the suppression hearing about the content of these two conversations, and Marrufo also testified about them at trial.  Marrufo was not shown the video recording at the suppression hearing, but he was shown it at trial.  As to Marrufo's first visit, Ramos testified that Marrufo told him that if he did not cooperate with the agents, "it's going to be very bad for you," but that if Ramos cooperated, then he would be released that night.[1] Marrufo testified that he first visited Ramos to "check up on him," given that Ramos had been very distraught at the time of his arrest.  Marrufo stated that, during this initial visit, he also told Ramos that they knew that he was a Brazilian who was unlawfully in the U.S. and that it would be helpful for Ramos to tell the truth.  Marrufo specifically denied that he said anything about Ramos being released that night, and he denied making any promises to Ramos.

As to the second visit, Ramos testified that Marrufo said that the baggie contained drugs that had been found in Ramos's car and that, if he did not cooperate, he would be charged with drug trafficking and "[t]hat's going to give you

---

[1] In response to a leading question from his own counsel, Ramos mistakenly agreed that the agent who visited him was "Agent Barron" (who had also been involved in Ramos's arrest) rather than Agent Marrufo.  All parties agree that the agent in the video is Marrufo.  The magistrate judge did not rely on this error in explaining why he found Ramos not to be credible.

years in prison." Ramos said that Marrufo reiterated that, "if you talk to us you can go home tonight." According to Ramos, Marrufo asked him to agree to an interview right away, saying, "Come over here with us." At the suppression hearing, Marrufo testified that he did not remember whether he had brought a baggie with him to Ramos's cell, but he affirmatively denied telling Ramos that drugs had been found in his vehicle, and he denied threatening him with drug charges. In cross-examining Marrufo at the suppression hearing, the prosecutor elicited an affirmative response to a question about whether, as part of a "welfare check," Marrufo sometimes brought food in baggies. In redirect examination, defense counsel asked point blank whether Marrufo had given Ramos food in his cell, and Marrufo said, "I didn't give him any food." Defense counsel then asked, "So if you didn't ever give him food, why would you have a baggie in your hand?" Marrufo responded, "I don't recall if I had a baggie in my hand or not."

At trial, Marrufo was again asked about the second visit, and—before he had seen the video recording of the second visit—he testified that "I didn't show him a baggie. If I had one in my hand, then I had it in my hand because I was doing something else with it, but it wasn't to show him a baggie." Marrufo again denied threatening Ramos with drug charges, stating, "He didn't have any drugs in his possession, why would I charge him with drugs?" After being shown the recording, Marrufo said that the baggie "looks like an evidence bag," and he noted that Ramos's cell was "en route to the evidence locker."

Ramos moved to suppress his confession on the ground, *inter alia*, that it was involuntarily given in response to the threat that he would be falsely charged with a drug crime. The evidentiary hearing on the motion to suppress was held

before a magistrate judge, who prepared a report under 28 U.S.C. § 636 recommending that the motion be denied. The magistrate judge gave numerous reasons for finding Ramos not to be credible, including that many aspects of his overall testimony and statements were "not plausible" and that "his demeanor was not that of an honest but nervous witness, but instead was that of a fabricator." As to the conflicting testimony about a baggie, the magistrate stated: "The Government does not explain the bag, but there are alternative explanations. The most likely of which is that the bag contained medicine Defendant had requested." This comment was apparently a reference to the fact that Agent Daniel Regan had testified at the suppression hearing that, at one point, Ramos requested prescription medication that was in his car at the time of his arrest, and Regan retrieved it for him.

Ramos filed timely objections to the magistrate's report. On the voluntariness issue, Ramos's objection emphasized the "PLASTIC BAGGIE," which he referenced in all capital letters. After noting that the magistrate judge conceded that "the government could not explain the bag," Ramos argued that the magistrate judge engaged in an "extraordinary act of speculation" by positing an explanation that the Government itself had not offered, namely that "the bag likely contained medicine that the Defendant had requested." Ramos argued that a "viewing of the video of the bag does not support it containing medicine or pill bottles or anything but powder on the bottom of the bag." Ramos further argued:

> The video shows Border patrol Agent Mar[r]ufo showing Mr. Ramos a bag containing some sort of powder on the bottom of the bag. Agent Mar[r]ufo

> conveniently has no recollection. For some
> reason, the Magistrate Judge goes out of his
> way to present a reason for the baggie that is
> not supported in the evidence.

In a boilerplate order, the district court overruled the
objections and adopted the magistrate judge's report. Ramos
moved for reconsideration, complaining that the district
court's order was bereft of any discussion of the facts or the
issues of Ramos's motion and that, in his view, the district
judge had failed to conduct the de novo review required by
the statute. The district court denied the motion. Well more
than half of the text of that order consists of verbatim
quotations from the prior order adopting the magistrate's
report. The remainder consists of conclusory assertions that
the district judge reviewed everything and conducted a de
novo review. The relevant text of the order denying
reconsideration—like the prior order adopting the magistrate
judge's report—contains no mention whatsoever of any of
the case-specific facts or legal issues raised by Ramos's
motion or by his objections to the magistrate judge's report.

## II

In my view, the district judge's failure to discuss *any* of
the issues raised by Ramos's motion to suppress or by
Ramos's objections to the magistrate judge's report is
unacceptable and warrants remand.

In defining what types of pretrial motions a magistrate
judge is empowered to *resolve* in the first instance, the
relevant statute specifically excludes a motion "to suppress
evidence in a criminal case." 28 U.S.C. § 636(b)(1)(A).
Instead, with respect to a defense motion to suppress, a
magistrate judge is only authorized, if designated by the

district judge, "to conduct hearings, including evidentiary hearings, and to submit to a judge of the court *proposed findings of fact and recommendations for the disposition*, by a judge of the court," of that motion. *Id*. § 636(b)(1)(B). The statute further provides that "[w]ithin fourteen days after being served with a copy" of the magistrate judge's report, "any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." *Id*. § 636(b)(1). If such objections are timely filed, then a district "judge of the court *shall* make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id*. (emphasis added); *see also* FED. R. CIV. P. 72(b)(3).

We have held that, in some cases, a district judge may satisfy the required statutory de novo review by including, in the order ruling on the parties' objections, an unadorned statement that he or she has adopted the magistrate judge's report after fully considering the record, the report, and the parties' objections to the report. *See*, *e.g.*, *North Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1450 (9th Cir. 1986). But "[b]ecause there is a concern that a district judge may nevertheless be tempted on occasion to rubber stamp the recommendation of a magistrate, the courts of appeal[s] have responsibility to ensure that the district judge has taken the task of de novo review seriously." *See* 12 C.A. WRIGHT, A. MILLER, & R. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3070.2, p. 453 (3d ed. 2014). That responsibility is all the more important when, as here, the district judge's conclusory statement that a de novo review was conducted is unaccompanied by *any* case-specific reasoning whatsoever. *Cf. United States v. Jones*, 22 F.4th 667, 679 (7th Cir. 2022) (upholding district judge's adoption

of magistrate judge's report in a brief order that did contain case-specific discussion of objections (referencing *United States v. Jones*, 2020 WL 2507927 (N.D. Ind. May 15, 2020)). Thus, while we should "normally presume that the district court has made such a de novo review," that presumption should not apply if "affirmative evidence indicates otherwise." *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015) (simplified); *see also Gonzalez-Perez v. Harper*, 241 F.3d 633, 636 (8th Cir. 2001) (stating that the court will presume that the district judge conducted a proper de novo review "absent evidence to the contrary"). For several reasons, such a presumption is not warranted here.[2]

First, the magistrate judge's report contains an obvious factual error concerning a critical issue and the error was raised in Ramos's objections. *Cf. Murphy v. IBM Corp.*, 23 F.3d 719, 722 (2d Cir. 1994) (noting that the "correctness of the report" in that case was a factor that confirmed the propriety of summarily adopting it). Ramos's motion to suppress his confession based on voluntariness rested dispositively on his claim that, during his second visit to Ramos's cell, Marrufo had confronted Ramos with a baggie of drugs that Marrufo (falsely) claimed were found in Ramos's car and that, if Ramos did not cooperate, Ramos

---

[2] I reject the majority's suggestion that the relevant inquiry is whether there are grounds "to second-guess" the *veracity* of the district court's "assertion" that it has conducted a de novo review. *See* Opin. at 19–20. I have no reason to doubt that the district judge endeavored to address the merits of Ramos's motion conscientiously and that, subjectively, the judge believed that he had conducted a sufficient de novo review. But our subjective beliefs are not always objectively accurate and, when measured up against objective standards, the judge's order here falls short.

would be sent to prison for years on a drug trafficking charge. Marrufo flatly denied that he had said any such thing. Ramos's claim on this score simply cannot adequately be assessed without a sufficient factual finding as to what Marrufo did or did not say during that second cell visit. On this point, there were aspects to both men's testimony that were problematic. As the magistrate judge noted, Ramos's credibility was generally impaired by the implausibility of some of his other testimony and statements, and that general lack of credibility could suffice to reject his testimony on this score as well. On the other hand, as the magistrate judge noted, the Government had failed to explain the baggie. Marrufo could not explain it either, because he stated at the suppression hearing that he did not recall whether he had a baggie. In nonetheless finding that Marrufo did not threaten Ramos with a baggie of drugs, the magistrate judge speculated that the "most likely" reason why Marrufo had the baggie was that it contained the medicine that Ramos had requested. But that speculation is clearly erroneous, because (1) the recording shows that Marrufo did not give the baggie or its contents to Ramos during the cell visit; and (2) the hearing testimony established that a different agent was the one who gave Ramos his medication.

On appeal, the Government points to the different explanation that Marrufo gave at trial, when he stated that the baggie was probably an evidence bag that he happened to be carrying with him on his way to the evidence locker. *See Rocha v. United States*, 387 F.2d 1019, 1021 (9th Cir. 1967) ("In determining whether a district court erred in admitting evidence claimed to have been seized as the result of an unreasonable search, an appellate court will not ordinarily limit itself to the testimony received at a pretrial motion to suppress, but will also consider pertinent

testimony given at the trial."). But this explanation is hard to square with the video recording, in which Marrufo prominently extends his arm and holds out the bag towards Ramos for nearly half of the visit. Even though there is no audio, the inference appears inescapable that Marrufo is *discussing* the baggie with Ramos. Indeed, it is notable that *both* of the explanations raised at the suppression hearing (*i.e.*, the Government's suggestion in cross-examination that Marrufo was bringing Ramos food and the magistrate judge's suggestion that Marrufo was bringing him medicine) rest on the view that Marrufo *was* discussing the baggie with Ramos.

As I noted earlier, Ramos's objections to the magistrate judge's report prominently highlighted this key issue about why Marrufo was showing Ramos a baggie that appears to contain a powdery substance, and it specifically (and correctly) pointed out that the magistrate judge's medicine explanation was rank speculation that was unsupported by the record. Given this backdrop, it is very difficult to see how the requisite de novo review of this objection, and of the magistrate judge's report, could have led to a wholesale adoption of that report *without any modification whatsoever*. Even if the district judge thought that the magistrate judge reached the right ultimate conclusion for the wrong reasons, the district court would still be obligated either to correct the report before adopting it or to adopt it only in part. *See* 28 U.S.C. § 636(b)(1) (requiring a de novo "determination" of any "specified proposed findings . . . to which objection is made").

The majority dismisses this erroneous statement by the magistrate judge on the grounds that it was immaterial to the overall correctness of the report. *See* Opin. at 22–23. According to the majority, the error does not matter because

the magistrate judge "was not required to propose a factual finding about the contents of the bag," but only had to decide "whether Ramos's confession was voluntary." Opin. at 22–23; *see also* Opin. at 20. This comment fundamentally misconceives the role of a district judge in reviewing a magistrate judge's report and recommendation under § 636(b)(1)(B). That role is *not* akin to this court's review of district court judgments, which may be affirmed, despite clear errors, so long as those mistakes are harmless. *See generally Neder v. United States*, 527 U.S. 1, 8–9 (1999) (discussing scope of harmless-error review of constitutional errors); *United States v. Berry*, 627 F.2d 193, 201 (9th Cir. 1980) (stating that, if there was a "non-constitutional error," we may "affirm if the error is more probably harmless than not"). Because, for the narrow class of motions governed by § 636(b)(1)(B), the magistrate judge may only submit "*proposed* findings of fact and *recommendations* for the disposition" of the motion, *see* 28 U.S.C. § 636(b)(1)(B) (emphasis added), any such report—including the errors within it—becomes the ruling of the district court *itself* to the extent that it is adopted. In that sense, a magistrate judge's report under § 636(b)(1)(B) is more akin to a draft opinion than to a judgment. Accordingly, where, as here, the magistrate judge's report contains a clear error, and the error has been correctly called to the district court's attention by a timely objection, the district court abuses its discretion in proceeding nonetheless to formally adopt the error as its own. And the fact that the district court did so here is a strong indication that it did not perform the "*proper* de novo review" required by § 636(b)(1). *See* Opin. at 15 (emphasis added).

Second, there are good reasons to suspect that the district judge's order adopting the magistrate judge's report here is,

for all practical purposes, a 4½-page rubberstamp. Nearly all of the verbiage in the order is non-specific to this case and consists largely of citations addressing the legal framework for reviewing magistrate judges' reports. Indeed, nearly two full pages consist of a string citation of cases upholding, as sufficient to satisfy de novo review, district judges' unexplained orders summarily rejecting objections and adopting such reports. The only aspects that relate specifically to this case are the names of the magistrate judge who filed the report and of the party who objected and the docket numbers of the parties' filings. Moreover, a Westlaw search reveals that, on at least 30 other occasions since March 2021, this same district judge has entered largely verbatim identical boilerplate orders—complete with the exact same pages of string cites—rejecting objections to, and adopting, magistrate judges' reports.[3]  Indeed, a Westlaw

---

[3] *See United States v. Rakestraw*, 2023 WL 2624461 (D. Ariz. Mar. 24, 2023); *Knight v. Commissioner of Soc. Sec. Admin.*, 2023 WL 119397 (D. Ariz. Jan. 6, 2023); *Elem v. Shinn*, 2022 WL 17668701 (D. Ariz. Dec. 14, 2022); *Loreto v. Arizona Bd. of Regents*, 2022 WL 17369424 (D. Ariz. Dec. 2, 2022); *Dorame v. Kijakazi*, 2022 WL 16707018 (D. Ariz. Nov. 4, 2022); *United States v. Alissa*, 2022 WL 4545758 (D. Ariz. Sept. 29, 2022); *Barone v. Kijakazi*, 2022 WL 4396262 (D. Ariz. Sept. 23, 2022); *Cisneros v. Ryan*, 2022 WL 3577270 (D. Ariz. Aug. 19, 2022); *Williams v. Arizona Super. Ct. of Pima Cnty.*, 2022 WL 2314757 (D. Ariz. June 28, 2022); *Morrow v. Temple*, 2022 WL 2286803 (D. Ariz. June 24, 2022); *United States v. Williams*, 2022 WL 2187745 (D. Ariz. June 17, 2022); *United States v. Monreal-Rodriguez*, 2022 WL 1957634 (D. Ariz. June 6, 2022); *United States v. Rakestraw*, 2022 WL 1237035 (D. Ariz. April 27, 2022); *United States v. Moore*, 2022 WL 112497 (D. Ariz. April 15, 2022); *United States v. Monteen*, 2022 WL 1044919 (D. Ariz. April 7, 2022); *Mendoza v. Commissioner of Soc. Sec. Admin.*, 2022 WL 897098 (D. Ariz. Mar. 28, 2022); *Felix v. Shinn*, 2022 WL 326360 (D. Ariz. Feb. 3, 2022); *United States v. Monreal-*

search revealed only three instances in that time period in which this district judge departed from this boilerplate order in ruling on objections to a magistrate judge's report. *See United States v. Garcia*, 2023 WL 1989644 (D. Ariz. Feb. 14, 2023) (rejecting, after the Government objected, a magistrate judge's report recommending granting a motion to suppress); *United States v. Moore*, ___ F. Supp. 3d ___, 2022 WL 5434268 (D. Ariz. Oct. 7, 2022) (same); *Frodsam ex rel. Fleming & Curti PLC v. Arizona*, 2022 WL 3082911 (D. Ariz. June 23, 2022) (summarily rejecting objections and adopting magistrate judge's report recommending transfer of case to Phoenix division of the district court). I am unaware of any circuit precedent that has ever upheld this sort of near-uniform use of unexplained orders that summarily adopt magistrate judges' reports wholesale. *Cf. Jones*, 22 F.4th at 679 (noting that "in *some* cases, a district court may *even* adopt the magistrate judge's proposed findings and recommendation in its entirety without writing its own opinion" (emphasis added)).

Third, we have previously admonished this same district judge for using boilerplate orders in ruling on objections to

---

*Rodriguez*, 2022 WL 130969 (D. Ariz. Jan. 14, 2022); *Chiaminto v. Commissioner of Soc. Sec. Admin.*, 2022 WL 71985 (D. Ariz. Jan. 7, 2022); *Pesqueira v. Arizona*, 2021 WL 6125732 (D. Ariz. Dec. 28, 2021); *United States v. Lee*, 2021 WL 5782872 (D. Ariz. Dec. 7, 2021); *Randall v. Arizona*, 2021 WL 5771155 (D. Ariz. Dec. 6, 2021); *Norman v. Rancho del Lago Cmty. Ass'n*, 2021 WL 4272692 (D. Ariz. Sep. 21, 2021); *Bailey v. Ethicon Inc.*, 2021 WL 4190625 (D. Ariz. Sep. 15, 2021); *Celaya v. Shinn*, 2021 WL 3773766 (D. Ariz. Aug. 25, 2021); *United States v. Rakestraw*, 2021 WL 3046905 (D. Ariz. July 20, 2021); *Threats v. Shartle*, 2021 WL 2646873 (D. Ariz. June 28, 2021); *Russell v. University of Arizona*, 2021 WL 1138031 (D. Ariz. Mar. 25, 2021); *Hollingshead v. Shinn*, 2021 WL 871640 (D. Ariz. Mar. 9, 2021); *Channel v. Shinn*, 2021 WL 871530 (D. Ariz. Mar. 9, 2021).

magistrate judges' reports, but to no avail.  In *United States v. Jones*, 837 F. App'x 423 (9th Cir. 2021), the district judge adopted the magistrate judge's report recommending denial of a motion to suppress in a one-page summary order that was devoid of any reasoning beyond an assertion that the "objected-to portions" of the report had been reviewed de novo.  *See United States v. Jones*, 2018 WL 6329455, at *1 n.1 (D. Ariz. Dec. 4, 2018).  In our February 24, 2021 memorandum affirming that decision, we nonetheless noted:

> *[T]he district court should not have summarily adopted the magistrate judge's report and recommendation without addressing all of Defendant's objections*, namely that the magistrate judge failed to address his constitutional challenges to [the detaining federal agent's] cross-certification [under Arizona law]. *See Brown v. Roe*, 279 F.3d 742, 745 (9th Cir. 2002).  When a party objects to the proposed findings and recommendations, the district court judge must "make a de novo determination of those portions of the report or specified proposed findings and recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  However, in the case before us, addressing the objections would not have resulted in a different outcome.

*Jones*, 837 F. App'x at 424 (emphasis added).  Less than two weeks later, on March 9, 2021, the district judge first issued what is now his 4½-page standard order overruling objections to, and adopting, magistrate judges' reports.  *See supra* note 3.  Thus, the district judge's apparent response to

our admonition in *Jones* about summarily adopting reports was to craft a new standard order explicitly defending and continuing a consistent practice of such summary adoptions.

As Ramos noted below, the boilerplate nature of the district judge's order in this case is starkly illustrated by the fact that the order begins with a wholly inapposite paragraph discussing the court's decision to "exercise[] its discretion to not consider" any "new evidence, arguments, and issues that were not timely and properly raised" before the magistrate judge and to instead deem those points to be "waived." This paragraph makes no sense, because there were no such "waived" matters in Ramos's objections, and the Government's response to those objections did not argue that any of them had been waived. By holding that even this peculiar inclusion of inapplicable boilerplate makes no difference here, *see* Opin. at 20 n.5, the majority underscores its wholesale abdication of any meaningful review in this area. Under today's opinion, every district judge in the circuit will now be incentivized to develop a similar, one-size-fits-all rubberstamp order.

Fourth, it is important to keep in mind that the underlying issue here is one of constitutional dimension. In holding that "the Constitution [is] not violated by the reference to a Magistrate [Judge] of a motion to suppress evidence in a felony trial," the Supreme Court has emphasized that the statutory requirement of de novo review ensures that "the handling of suppression motions invariably remains completely in the control of the federal district court." *Peretz v. United States*, 501 U.S. 923, 937–38 (1991) (quoting *United States v. Raddatz*, 447 U.S. 667, 685 (1980) (Blackmun, J., concurring)). Where, as here, there are reasons to believe that the requisite review and control by the district judge may not have occurred, principles of

avoidance of constitutional concerns provide a further ground for a remand and re-examination.

Finally, I do not think that we can say that the district court's error was harmless. As I have explained, the problem here is that the magistrate's report contains a clearly erroneous finding about why Marrufo had the baggie, and this court, as an appellate tribunal, lacks any authority to say what factual finding should *replace* that defective determination. The evidence on the point was hotly disputed, there are difficulties with both side's explanations, and the record would support more than one resolution. Nor, on this record, do I think that we can say that, regardless of the competing explanations for the baggie, Ramos is somehow not credible on this point as a matter of law. The only person who ultimately can make this determination is not us, nor is it the magistrate judge—only the district judge can resolve this point by making appropriate factual determinations that are untainted by the magistrate judge's clear error.

Accordingly, I think that there are sufficient grounds to warrant remand here with instructions to issue a new order that reflects the requisite de novo review and that does not summarily adopt a magistrate judge's report that contains a clearly erroneous factual finding on a critical issue.

\*       \*       \*

For the foregoing reasons, I would remand this matter to the district court with instructions that the district judge reconsider the suppression motion de novo and, if that motion is found to have merit, to then order a new trial. To the extent that the majority concludes otherwise, I respectfully dissent.